OPINION
{¶ 1} This accelerated calendar appeal arises from the Trumbull County Court of Common Pleas. Appellant, Larry Lawrence ("Lawrence"), appeals from the judgment entered by the trial court in favor of appelle, Jiffy Print, Inc. ("Jiffy"). For the reasons set forth below, we affirm the judgment of the trial court.
 {¶ 2} In January 2001, Lawrence was employed by Millcraft Paper Company ("Millcraft"), as a truck driver. Lawrence's daily routine included the delivery of products to Millcraft customers, including Jiffy. At this time, Lawrence had been delivering Millcraft products to Jiffy about three times each week for over one year. On January 9, 2001, Lawrence did not enter Jiffy's premises in the usual manner because snow was stacked near the normal entrance to Jiffy's business. Instead, Lawrence used a backdoor for the product delivery. While in the process of this delivery, and pulling a two-wheeled jack (dolly), Lawrence slipped and fell on ice which had accumulated on a sidewalk almost fifteen feet from the rear entrance of Jiffy's premises.
 {¶ 3} Lawrence filed a negligence complaint against Jiffy on January 8, 2003, seeking damages for injuries resulting from the slip and fall on ice. Jiffy filed an answer on February 11, 2003. Jiffy filed a motion for summary judgment on February 9, 2004. Jiffy attached a transcript of the deposition of Lawrence, and affidavit of Carolyn Collazo, the manager of Jiffy's business. Thereafter, on March 25, 2004, Lawrence filed a brief in opposition to the motion for summary judgment. Lawrence attached affidavits of Ken Fry, and Kevin Kroger, employees of Millcraft at the time of the accident. On April 5, 2004, Jiffy filed a reply brief in support of its motion for summary judgment. Thereafter, Lawrence filed a response brief on May 11, 2004.
 {¶ 4} The trial court granted Jiffy's motion for summary judgment on May 11, 2004. The court did not set forth findings of fact and conclusions of law, and no such request was made pursuant to Civ.R. 52. It is from this judgment that Lawrence timely filed the instant appeal and raises the following assignment of error for our consideration:
 {¶ 5} "The trial court erred in granting Defendant's Motion for Summary Judgment since genuine issues of material fact existed demonstrating that Defendant Jiffy Print, Inc. was negligent in allowing a hazardous condition on its premises for which it had notice."
 {¶ 6} Summary judgment is appropriate when the moving party establishes the following: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C).
 {¶ 7} If the moving party meets its initial burden under Civ.R. 56(C), then the nonmoving party has a reciprocal burden to respond, by affidavit or as otherwise provided in the rule, in an effort to demonstrate that there is a genuine issue of fact suitable for trial. Dresher v. Burt (1996), 75 Ohio St.3d 280,293. If the nonmoving party fails to do so, the trial court may enter summary judgment against that party. Civ.R. 56(E).
 {¶ 8} Appellate courts review a trial court's granting of summary judgment de novo. Brown v. Cty. Commrs. (1993),87 Ohio App.3d 704, 711. The Brown court stated that "* * * we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Linkv. Leadworks Corp. (1992), 79 Ohio App.3d 735, 741. In addition, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.
 {¶ 9} Under general rules of premises liability "dangers from natural accumulation of ice and snow are so ordinarily obvious and apparent that an occupier of [the] premises may reasonably expect that a business invitee on the premises will discover those dangers and protect himself against them." Sidle v.Humphrey (1968), 13 Ohio St.2d 45, paragraph one of syllabus. As such, an owner or occupier owes no duty, even to a business invitee, to remove natural accumulation of snow. Id.
 {¶ 10} There are exceptions to this rule. If an occupier has notice, actual or implied, that a natural accumulation of snow or ice has occurred on his premises and created a condition substantially more dangerous than a business invitee should have anticipated by reason of the knowledge of the conditions prevailing generally in the area, negligence may be proven.Debie v. Cochran Pharmacy-Berwick, Inc. (1967),11 Ohio St.2d 38, 41. To become liable, the owner must have some superior knowledge of the existing danger or peril. Id.
 {¶ 11} An exception to "no duty" also arises when a dangerous or unnatural accumulation of ice or snow is permitted or created through the active negligence of the owner. Lopatkovich v.Tiffin (1986), 28 Ohio St.3d 204, 207. Lawrence asserts this argument in his appeal claiming he "slipped on an unnatural accumulation of ice and snow which arose as a result of a leaking/dripping portion of a roof/overhang of [Jiffy's] premises." Lawrence further contends that this leak/drip was caused by a "defective condition" in the roof/overhang of which Jiffy had notice but failed to repair.
 {¶ 12} In regards to issues of slip and fall on ice or snow, the threshold question is whether the accumulation of ice is natural. Mikula v. Tailors (1970), 24 Ohio St.2d 48, paragraphs five and six of the syllabus; Community Ins. Co. v. McDonald'sRestaurants of Ohio (Dec. 11, 1998), 2nd Dist. Nos. 17051 and 17053, 1998 Ohio App. LEXIS 5878.
 {¶ 13} After review of the record in a light most favorable to Lawrence, we find that Lawrence has failed to produce sufficient evidence to sustain his claim that the ice accumulation was unnatural.
 {¶ 14} An unnatural accumulation refers to causes and factors other than the winter's low temperatures, strong winds, drifting snow, and natural thaw and freeze cycles. Unnatural accumulations are caused by a person doing something that would cause ice and snow to accumulate in an unexpected place or way. Porter v.Miller (1983), 13 Ohio App. 3d 93, paragraph one of syllabus.
 {¶ 15} Unnatural accumulations are either "man-made" or "man-caused". Id., at 95.
 {¶ 16} "The first is water that comes from natural sources, but is unnaturally impeded on a land-owner's property. The second is when the water itself comes from an unnatural, i.e. man-made source." Notman v. AM/PM, Inc. 11th Dist. No. 2002-T0-144, 2004-Ohio-344, at ¶ 24. In the case sub judice, Lawrence fails to identify the source of the dripping water. However, the evidence supports that the water came from a natural source, rain or melting snow.
 {¶ 17} Lawrence produced two affidavits from Millcraft employees regarding the condition of the roof/overhang and the resulting dripping leaking. Ken Fry was not present on the day of the accident, but stated that he had observed "water leaking from an overhang at the back of [Jiffy's] building; I noticed this leak from the roof edge overhang when it had rainedpreviously." (Emphasis added).
 {¶ 18} Kevin Kroeger ("Kroeger"), was assisting Lawrence in his delivery and witnessed the accident. In his affidavit, Kroger stated, "that it appeared the ice had formed from either a leak or a continual drip from this specific area."
 {¶ 19} No climatological reports from the day of the accident were submitted into evidence. However, in his deposition, Lawrence stated that, "a light dusting of snow" was present and a snow pile was located on the premises. Thus, the evidence supports that the source of the water was a natural, weather related condition of rain, or melting snow.
 {¶ 20} Expert testimony may be necessary in cases where a construction defect allegedly causes the unnatural impediment of ice or snow. Notman, at ¶ 26. "The rationale for requiring the expert testimony to prove a construction defect is that construction defects are generally outside the expertise of lay persons. However, the lay person may testify that the water that froze into ice came directly from a man-made source, such as a hose or facet." Id.
 {¶ 21} Here, Jiffy produced an affidavit from its store manager stating that Jiffy's roof "* * * is flat and has no gutters or downspouts." Appellant does not claim the dripping/leaking was caused by the lack of gutters. However, we note that the absence of a gutter, by itself, does not establish that snow which melts, or drips off a roof and freezes on the ground below is an unnatural accumulation of ice for which the property owner may be liable. Mariner v. Wald Fisher, Inc.
(Sept. 2, 1999), 8th Dist. No. 74613, 1999 Ohio App. LEXIS 4080, at 13; Mayes v. Boymel, 12th Dist. No. CA20020-3-051, 2002-Ohio-4993, at ¶ 18.
 {¶ 22} Further, the melting of ice and snow and subsequent refreezing is insufficient, standing alone, to impose liability.Martin v. Hook SuperX, Inc. (Mar. 18, 1993), 10th Dist. No. 92AP-1649, 1993 Ohio App. LEXIS 1569, at 4; Nemit v. ElizabethHosp. Med. Ctr. (June 26, 2001), 7th Dist. No. 99-CA-202, 2001-Ohio-3315, at 9.
 {¶ 23} In this case, Lawrence offered no testimony as to the nature of the defective condition of the roof in its collection and runoff from rain or melting snow.[1]
 {¶ 24} On the day of the accident, Lawrence observed that icicles had formed on the roof/overhang over the area where he fell. Evidence of icicles in the area of the fall, also does not provide sufficient evidence of a defect. Generally, the melting and refreezing of the ice from icicles on a landowner's premises is a natural accumulation of ice. Welch v. Bloom, 6th Dist. No. L-04-1003, 2004-Ohio-3168, at ¶ 9; Nemit, at 10.
 {¶ 25} Lawrence further testified that "he did not notice" any other ice patches on the outside area of Jiffy's premises. (Emphasis added). While this observation may show that the ice was caused by a dripping/leaking of snow or icicles, it is insufficient to prove a defective condition existed.
 {¶ 26} Lawrence's reliance on Kunz v. Boliantz (June 11, 1993), 5th Dist. No. 92C-A-73, 1993 Ohio App. LEXIS 3150, is misplaced. In Kunz, there was evidence that the accumulation of ice was caused by an overflow of water from a roof gutter above a common entrance stairway. This case does not involve an overflowing gutter as in Kunz, but instead involves allegations of a defective condition of a roof/overhang without gutters or downspouts.
 {¶ 27} In order to prevail in a negligence claim, Lawrence must submit evidence that Jiffy was actively negligent in permitting and/or causing a dangerous/unnatural accumulation of ice or snow. Appellant argues that Jiffy had notice of the defective condition of the roof/overhang, which it failed to remedy. We disagree.
 {¶ 28} In his deposition, Lawrence stated that both he and a prior manager were aware of water runoff from the roof/overhang. "* * * [W]e used to joke around and make comments about how much water * * *. I had seen water coming over the side there, yes in the spring and, you know, rainy seasons." Taken in a light most favorable to Lawrence, the evidence supports that both Lawrence and Jiffy were aware that rain resulted in water dripping onto the sidewalk below. This testimony is insufficient evidence for an inference of negligence that Jiffy had notice of a defective condition that could result in an unnatural accumulation of ice. No evidence was submitted that an excessive amount of ice could accumulate from water running off the roof, causing an unsafe surface where melting snow could drop onto the sidewalk from ice.
 {¶ 29} Thus, Lawrence failed to establish any causal connection between Jiffy's alleged omission to remedy the roof/gutters and the ice accumulation on the sidewalk.
 {¶ 30} There was no evidence offered of applicable building codes requiring gutters or downspouts, that Jiffy in any way violated such codes, or any evidence as to any drainage system of Jiffy's premises and that it was working improperly to cause an unnatural accumulation of ice. Absent sufficient evidence, we must conclude that the dripping was nothing more than the melting of snow dropping off a roof that has no gutters or downspouts. Therefore, we must conclude that Lawrence has not met his burden in producing evidence to support that Jiffy owed a duty to remove the ice.
 {¶ 31} We also note that Ohio courts have repeatedly held that an accumulation of ice is not unnatural simply because water collected in a depression in a sidewalk or driveway and subsequently froze due to cold weather. See, e.g., Juredine v.Heather Hill, Inc. (Mar. 26, 1993), 11th Dist. No. 92-G-1704, 1993 Ohio App. LEXIS 1733; Goodwill Indust. of Akron v.Sutcliffe (Sept. 13, 2000), 9th Dist. No. 19972, 2000 Ohio App. LEXIS 4131; D'Ambrosi v. Vicorp Specialty Restaurant, Inc.
(Feb. 23, 1989), 8th Dist. No. 54976, 1989 Ohio App. LEXIS 628. An unnatural accumulation of ice and snow is one that has been created by causes and factors other than meteorological forces of nature such as the inclement weather conditions of low temperature, strong winds and drifting snow. Porter, at 95.
 {¶ 32} While we conclude that this was a natural accumulation of ice, which generally relieves an owner from liability, there is an exception. A landowner may be held liable for injuries occasioned by a fall caused by a natural accumulation of ice if the landowner is shown to have actual or implied notice that the natural accumulation of ice or snow on the premises has caused a condition substantially more dangerous than their business invitees should have anticipated. Belavich v. Newcomb, 11th Dist. No. 2004-G-2584, 2005-Ohio-1890, at ¶ 21, citing Debie at paragraph one of the syllabus.
 {¶ 33} However, Lawrence offered no evidence suggesting the ice on which he slipped created a substantially more dangerous condition than business invitees should have otherwise expected, or that Jiffy had actual or constructive notice of the ice.
 {¶ 34} Here, the accident occurred in January, and it is undisputed that snow was present on the premises. In general, an owner or occupier of land owes no duty to warn business invitees of the dangers of natural accumulations of snow or ice or to remove them. The underlying rationale is that "everyone is assumed to appreciate the risks associated with natural accumulations of ice and snow and, therefore, everyone is responsible to protect himself or herself against the inherent risks presented by natural accumulations of ice and snow."Brinkman v. Ross (1993), 68 Ohio St.3d 82, 83-84.
 {¶ 35} No evidence was submitted that it had actual or constructive notice of any icy condition of the sidewalk on the morning of January 9, 2001, or at any other time. On the day of the accident, it was a Millcraft co-employee who was holding the outside door to assist Lawrence in his delivery.
 {¶ 36} Jiffy's evidence by contrast denied that Jiffy had any a notice that a dangerous condition existed when it affirmatively asserted in the affidavit of its manager, Carolyn Collazo "[t]he incident involving the Plaintiff, Larry Lawrence, is the first time that I am aware in which an individual has allegedly slipped and fallen on ice and/or snow located on [Jiffy's] premises."
 {¶ 37} While we conclude that there was a natural accumulation of ice, Lawrence has not presented any material issue of fact. Accordingly, Lawrence's sole assignment of error is without merit. We hereby affirm the judgment of the Trumbull County Court of Common Pleas.
O'Neill, J., Rice, J., concur.
[1] Compare to Tyrrell v. Investment Assoc., Inc. (1984),16 Ohio App.3d 47, where evidence was presented that employees were aware that drips from the awning caused icy conditions to exist. See, also, Martin v. Edgewater Properties, Inc, (Nov. 25, 1992), 9th App. No. 92-CA-005307, 1992 Ohio App. LEXIS 6112. (evidence by building inspector as to roof drainage in violation of code).