[Cite as *Pringle v. Forum Health*, 2013-Ohio-537.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**TRUMBULL COUNTY, OHIO**


| | | |
|---|---|---|
| JOAN M. PRINGLE, et al., | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2008-T-0131** |
| FORUM HEALTH, | : | |
| Defendant-Appellee. | : | |


Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2007 CV 2709.

Judgment: Affirmed.


*Randil J. Rudloff* and *John M. Rossi*, Guarnieri & Secrest, P.L.L., 151 East Market Street, P.O. Box 4270, Warren, OH 44482 (For Plaintiff-Appellant).

*W. Scott Fowler*, Comstock, Springer & Wilson Co., L.P.A., 100 Federal Plaza East, Suite 926, Youngstown, OH 44503-1811 (For Defendant-Appellee).


THOMAS R. WRIGHT, J.

{¶1} Appellant, Joan M. Pringle, appeals from the judgment entry of the Trumbull County Court of Common pleas granting summary judgment in favor of appellee, Forum Health. Appellant challenges the trial court's determination that there were no issues of material fact as to whether her "slip and fall" was the result of a natural accumulation of snow and ice and not the result of an unnatural, dangerous, man-made condition created by appellee. For the reasons that follow, we affirm.

{¶2} On December 5, 2005, appellant drove to appellee's facility located on Elm Road in Warren, Ohio for a 10:00 a.m. appointment with her physician. Appellant parked her vehicle in the parking lot adjacent to the facility, which along with the sidewalk leading to the facility entrance, was covered with approximately two inches of snow. There were also flurries in the air. Appellant was wearing her winter boots that day. As appellant walked on the sidewalk toward the entrance to appellee's facility, she slipped and fell, causing injury to her left knee.

{¶3} Per a contract between appellee and John Miller, d.b.a. M2 Enterprises, M2 was obligated to remove snow and deposit salt upon all parking lots and sidewalks at the Elm Road facility when one inch or more of snow had accumulated on the premises. The day before, December 4, 2005, M2 applied a de-icing agent to the sidewalk called calcium chloride. M2 applied the calcium chloride with a drop spreader in order to get a heavier, more concentrated amount of product on the sidewalk. According to M2, calcium chloride is more effective than rock salt in melting snow and ice because it works in lower temperatures. Sometime between appellant's arrival at 10:00 a.m. and her departure at 12:30 p.m., M2 was called out to appellee's facility to clean and salt the area where appellant fell.

{¶4} On October 18, 2007, appellant filed a cause of action sounding in negligence against appellee. The trial court considered the matter on appellee's motion for summary judgment and appellant's response, and on November 12, 2008, granted appellee's motion. The trial court determined that reasonable minds could come to but one conclusion, and that conclusion is adverse to appellant. This timely appeal followed. Appellant asserts the following single assignment of error for our review:

{¶5} "The trial court erred in granting Forum Health's motion for summary judgment where genuine issues of material fact remain."

{¶6} Within that assignment of error, appellant presents three issues for our review:

{¶7} "[1.] Reasonable minds may conclude that Plaintiff Pringle's injuries resulted from an unnatural accumulation of ice resulting from a dripping canopy.

{¶8} "[2.] Reasonable minds may conclude that Plaintiff Pringle's injuries resulted from an unnatural accumulation of ice resulting from the re-freezing of ice after the application of de-icing agents.

{¶9} "[3.] Reasonable minds may conclude that Plaintiff Pringle's injuries resulted from an accumulation of ice, which was substantially more dangerous than anticipated and known to Forum."

{¶10} As a threshold matter, we note that:

{¶11} "Summary judgment is appropriate when the moving party establishes the following: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor." *Lawrence v. Jiffy Print, Inc.* 11th Dist. No. 2004-T-0065, 2005-Ohio-4043, ¶6.

{¶12} "If the moving party meets its initial burden under Civ. R.56(C), then the nonmoving party has a reciprocal burden to respond, by affidavit or as otherwise provided in the rule, in an effort to demonstrate that there is a genuine issue of fact

3

suitable for trial. *Dresher v. Burt* (1996), 75 Ohio St. 3d 280, 293 * * *. If the nonmoving party fails to do so, the trial court may enter summary judgment against that party." *Id.* at ¶7. Civ.R. 56(C) provides that acceptable evidence includes "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact * * *." In the instant case, the parties support their submissions on summary judgment with reference to portions of the deposition testimony of appellant and John Miller, owner/operator of M2.

{¶13} A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review, meaning that the appellate court is required to conduct an independent review of the evidence without deference to the trial court's decision. *Kordel v. Occhipinti*, 11th Dist. No. 2007-L-163, 2008-Ohio-6770, ¶8, citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

{¶14} "The Supreme Court of Ohio has consistently held that a business owner's duty of reasonable care does not extend to natural accumulations of ice and snow. *Debie v. Cochran Pharmacy-Berwick, Inc.* (1967), 11 Ohio St.2d 38, * * *; see, also, *Sidle [v. Humphrey*, 13 Ohio St.2d 45, at paragraph one of the syllabus]; *Brinkman v. Ross*, 68 Ohio St.3d 82, 83 * * *. Where snow and ice accumulate from natural meteorological occurrences, an owner or occupier has a right to assume an invitee will appreciate the risk presented and take action to protect himself. See *Brinkman*, supra; *see, also LaCourse v. Fleitz* (1986), 28 Ohio St.3d 209 * * *.

{¶15} "Ohio courts have acknowledged exceptions to this general rule. For instance, where a business owner is actively negligent in permitting or creating an unnatural accumulation of ice and snow, the no-duty rule is not applicable. See

4

*Lopatkovich v. Tiffin*, 28 Ohio St.3d 204, 207 * * *; see, also, *Sasse v. Mahle* (Nov. 19, 1999), 11th Dist. No. 98-L-157 * * *. Further, if a business owner has actual notice that a natural accumulation of ice or snow on his property has created a condition substantially more dangerous than a business invitee should have expected by reason of knowledge of conditions prevailing in the area, the owner owes the invitee a duty of care to warn of potential perils. * * *." *Bacon v. Fowlers Mill Inn & Tavern,* 11th Dist. No. 2007-G-2753, 2007-Ohio-4958, ¶15-16.

**{¶16}** "Under the law, therefore, an 'unnatural accumulation' must be the result of human activity." *Id.* at ¶17. Thus, unnatural accumulations are either "man-made" or "man-caused." *Lawrence*, 2005-Ohio-4043, at ¶15. Specifically, "[a]n unnatural accumulation refers to causes and factors other than the winter's low temperatures, strong winds, drifting snow, and natural thaw and freeze cycles. Unnatural accumulations are caused by a person doing something that would cause ice and snow to accumulate in an unexpected place or way." *Id.* at ¶14, citing *Porter v. Miller*, 13 Ohio App. 3d 93 (1983), paragraph one of the syllabus.

**{¶17}** The first two issues under appellant's assignment of error are interrelated. Therefore we will consider them together. Appellant contends that the accumulation of ice and snow was unnaturally caused or permitted by: (1) water and melting snow dripping from the canopy above the entrance to appellee's facility onto the sidewalk below, which subsequently froze in the area where appellant sustained her injuries; or (2) by the application of the de-icing agent used by M2, which subsequently caused the melted snow to refreeze, thereby contributing to the formation of any icy patch. For the reasons that follow, we reject appellant's arguments.

5

{¶18} From a purely factual standpoint, appellant's own deposition testimony discredits the existence of disputed material facts regarding whether the accumulation of ice and snow here was the result of unnatural means. Appellant testified as follows in her deposition regarding the purported source of the ice that caused her to fall:

{¶19} "Q. (Appellee's Attorney Fowler): At any time either that morning on previous occasions or after you fell, have you ever seen any moisture or anything like that dripping off of that canopy area?

{¶20} "A. (Appellant): I never paid attention to that.

{¶21} "Q. That's a fair answer. Okay.

{¶22} "A. Okay.

{¶23} "Q. So even if there was anything like that going on, you've never noticed it; is that a fair statement?

{¶24} "A. Correct.

{¶25} "Q. And that there was ice underneath it.

{¶26} "A. Correct.

{¶27} "Q. Do you have any idea what caused that ice to be there?

{¶28} "A. No.

{¶29} "Q. All right. Was there any evidence that someone had shoveled snow toward the area where you had your fall as opposed to cleaning it up and moving it away from that area?

{¶30} " * * *.

{¶31} "A. I don't recall that.

{¶32} " * * *.

**{¶33}** "Q. And I think you told me before you don't know where the ice came from that was underneath the snow that you encountered on your way toward the entrance area.

**{¶34}** "A. No, I don't know where it came from."

**{¶35}** Based on the foregoing excerpt from appellant's deposition, she claimed not to know the source of the ice accumulation on the sidewalk and never attributed it to a dripping canopy, M2's de-icing the day before, or any refreezing caused by those events. Our review of appellant's deposition does not reveal any testimony or evidence in support of her allegation that the existence or defective maintenance of the canopy, or the use of a de-icing agent, had any connection to her accident or caused the sidewalk to be more icy or slippery than it would have been if left in its natural state. Stated otherwise, appellant presents no record evidence that the ice had accumulated unnaturally. However, even if she had presented evidence creating an issue of fact regarding one or both of those conditions as a source of the ice accumulation, her arguments fail as a matter of law.

**{¶36}** This court specifically addressed the "dripping canopy" scenario in *Lawrence*, 2005-Ohio-4043. In *Lawrence*, the plaintiff-appellant had been delivering products to the defendant-appellee, and on the date in question, entered appellee's facility through the back door because the snow was stacked up near the normal entrance. *Id.* at ¶2. While in the process of delivery, appellant slipped and fell on ice which had accumulated on the sidewalk. *Id.* The trial court considered the matter on summary judgment. Appellee produced two affidavits from its employees regarding the condition of the roof/overhang. *Id.* at ¶17. One of the employees stated he had

observed dripping and leaking when it rained previously. *Id.* The other employee reported that the source of the ice was either a leak or a continual drip from that area. *Id.* at ¶18.

{¶37} This court concluded that "the evidence supports that the source of the water was a *natural*, weather related condition of rain, or melting snow." (Emphasis added.) *Id.* at ¶19. We further concluded that appellant "offered no testimony as to the nature of the defective condition of the roof in its collection and runoff from rain or melting snow." *Id.* at ¶23. In reaching those conclusions, we also specifically noted that "the melting of ice and snow and subsequent refreezing is insufficient, standing alone, to impose liability. * * *" (Internal citations omitted). *Id.* at ¶22. Therefore, even if appellant had shown that the accumulation of ice was the result of a "dripping canopy," in the absence of evidence that such dripping was caused by a defective condition of the canopy, the fact alone of melting snow and ice and the subsequent refreezing of the same would have been insufficient to support her theory of negligence on the part of appellee.

{¶38} A similar analysis applies to appellant's contention that the thaw-refreeze cycle due to M2's de-icing was the cause of the ice that had accumulated on the sidewalk. First, as previously noted, the definition of "unnatural" accumulation of ice includes factors *other than* the thaw and freeze cycle. *Lawrence* at ¶15. Further, as this court acknowledged in *Lawrence*, "Ohio courts have repeatedly held that an accumulation of ice is not unnatural simply because water collected in a depression in a sidewalk or driveway and subsequently froze due to cold weather." *Id.* at ¶31. Moreover, as the Tenth District Court of Appeals held in *Colletta v. Univ. of Akron*, 49

8

Ohio App.3d 35, syllabus (10th Dist.1988), "[a]n accumulation of ice and snow is not rendered 'unnatural' by the landlord's removal of the top layer of snow by plowing, exposing the accumulated ice and snow underneath." Subsequent accumulations after the initial plowing, as is applicable to this case, where run-off re-freezes, are not unnatural because this must be anticipated by all who live in snow-belt areas. *Hoenigman v. McDonald's Corp.* 8th Dist. No. 56010, 1990 Ohio App. LEXIS 131, *10.

**{¶39}** Accordingly, when applying the law on this subject to the present case, it is clear that the trial court did not err in granting summary judgment in appellee's favor because appellant did not present any Civ.R. 56(C) evidential materials indicating that the snow and ice on the sidewalk where she fell was the result of an unnatural accumulation created or permitted by any negligent act of appellee. *See Bacon*, 2007-Ohio-4958, at ¶15-16.

**{¶40}** Turning now to appellant's third issue, she claims that even if the accumulation of ice on the sidewalk had occurred naturally, appellee knew or should have known that it was substantially more dangerous than a business invitee could have appreciated. *Bacon* at ¶16. Again, we reject appellant's argument.

**{¶41}** Appellant cites to statements made by certain staff at the physician's office indicating that several other people had previously fallen outside the facility. However, none of those statements indicated that those people had fallen on the day in question.

**{¶42}** Appellant also points to a statement made by the attending physician, Dr. Quarles, to appellant that "I knew this was gonna happen, something to that effect as they're putting me in the wheelchair." First, without any evidence as to Dr. Quarles' relationship to appellee, the statement constitutes hearsay pursuant to Evid.R. 801(C)

9

(statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted). Second, even if we were to accept Dr. Quarles' statement as either non-hearsay or an exception to the hearsay rule, it does not indicate that Dr. Quarles had particular or "superior knowledge" that the prevailing conditions of the premises on that day, December 5, 2005, were "'substantially more dangerous to [appellee's] business invitees than they should have anticipated. * * *.'" *Love v. Red Roof Inn*, 11th Dist. No. 90-L-15-119, 1991 Ohio App. LEXIS 3888 at *4. *See contra Mikula v. Slavin Tailors*, 24 Ohio St.2d 48 (1970)(where an owner had notice that a natural accumulation of snow covered a hole in the surface of the parking lot, the owner's failure to correct the condition constituted a negligence claim); *Longenberger v. Collins Foods*, 52 Ohio App.2d 105 (1977)(business invitee was not bound to anticipate an abrupt change in grade of the parking lot surface, and, as such, the invitee was exposed to unforeseeable danger due to an accumulation of ice and snow.)

{¶43} Therefore, appellant failed to present any Civ.R. 56(C) evidence indicating that appellee or its employees were aware of a hazard "more dangerous than a business invitee should have expected by reason of knowledge of conditions prevailing in the area[.]" *Bacon*, 2007-Ohio-4958 at ¶16. Simply put, appellant offered no evidence suggesting that the ice on which she fell constituted a condition substantially more dangerous than appellee's business invitees should have expected or anticipated.

{¶44} Based on the foregoing, this court concludes that appellant's single assignment of error is without merit. The trial court did not err in granting summary

10

judgment in favor of appellee and in concluding that the accumulation of ice and snow on the day in question was the result of anything but a natural accumulation.

{¶45} Accordingly, for the reasons stated in this opinion, it is the judgment and order of this court that the judgment of the trial court is affirmed.


TIMOTHY P. CANNON, P.J.,

DIANE V. GRENDELL, J.,

concur.

11