[Cite as *State ex rel. Wilson v. Beljon*, 2013-Ohio-4753.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| THE STATE OF OHIO ON THE RELATION OF RICHARD A. WILSON, TRUSTEE, et al., | : | **O P I N I O N** |
| | : | |
| Plaintiffs, | : | |
| | | **CASE NO. 2012-P-0055** |
| - vs - | : | |
| | : | |
| WILLIAM BELJON, et al., | : | |
| | | |
| Defendants-Appellants/ Cross-Appellees, | : | |
| | : | |
| CITY OF AURORA, et al., | : | |
| | : | |
| Defendants-Appellees/ Cross-Appellants. | : | |

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2012 CV 0137.

Judgment: Affirmed.


*Terry G.P. Kane*, Kane & Kane, 111 East Main Street, Suite B, P.O. Box 167, Ravenna, OH 44266 (For Defendants-Appellants/Cross-Appellees).

*James A. Climer*, *Frank H. Scialdone*, and *John D. Pinzone*, Mazanec, Raskin, Ryder & Keller Co., L.P.A., 100 Franklin's Row, 34305 Solon Road, Solon, OH 44139 (For Defendants-Appellees/Cross-Appellants).


THOMAS R. WRIGHT, J.

{¶1} This case involves both an appeal and cross-appeal from two judgments of the Portage County Court of Common Pleas. In the appeal, appellants, Beljon One,

LLC and William Beljon, contest the trial court's determination that appellee, the City of Aurora, is entitled to a prescriptive easement across certain real property. In the cross-appeal, the city asserts that the trial court erred in not granting summary judgment in its favor on its separate claim for adverse possession of the real property.

{¶2} The disputed land is presently located under a 500 foot stretch of Pioneer Trail Road, a small thoroughfare which runs east-to-west through the City of Aurora and connects two major highways. The disputed span of roadway has existed in some form since prior to 1927, and has been used by the public throughout its existence. The road was initially paved at some point in the 1960's, and has remained in that state to the present.

{¶3} Prior to the incorporation of the City of Aurora, the disputed property was located in Lot 33 of Aurora Township. During the early 1900's, the property was part of a larger tract owned by E.K. Blauch. At some point in the 1920's, Blauch sold his tract to the Aurora Land Company. In 1927, in attempting to develop the entire tract, the land company submitted a subdivision plat to the Portage County Board of Commissioners. The subdivision plan divided the "Blauch" tract into various sublots, and also provided for creation of a new eighty-foot-wide right-of-way which would bisect the development. This planned right-of way was designated on the plan as "Pioneer Trail" road. However, it was not situated on the subdivision map in the same location as the actual roadway already in use. Instead, the planned right-of-way was located south of the existing road.

{¶4} The county commissioners approved the subdivision plat, but the Aurora Land Company never went forward with the development. Ultimately, the Blauch family re-acquired the entire tract in 1934 through a Sheriff's sale. Over the ensuing decades,

2

the tract was used primarily for agricultural purposes. Nevertheless, the tract was still officially divided into the sublots, and there were certain restrictive covenants which ran with the land.

{¶5}   In March 1946, the Blauch family conveyed its interest in the entire tract of land to Clyde and Ruth Curtis. Three years later, the Curtises then sold the tract to Jon and Eleanor Beljon, the parents of William Beljon, appellant, and his siblings. Through the years of their ownership, Jon and Eleanor became aware of the original subdivision plan of the Aurora Land Company, and of the planned alternative roadway that would have gone through the development. The Beljons were also aware that the pre-existing Pioneer Trail Road was not on the same area of land which had been designated for the planned right-of-way. As a result, the Beljons told their children that the public's use of the existing road was by the family's permission, and that they had the ability to revoke the use at any time. Furthermore, at some point in the 1960's, Jon placed signs near the road indicating that the existing pavement was a private driveway.

{¶6}   Through the years, certain problems developed as a result of the public's continuing use of the paved roadway. The majority of the problems were caused by a curve located within the 500 foot stretch of road. At one juncture, the city decided that it would be prudent to erect "caution" signs near the curve as a means of decreasing the number of accidents at that site. Whenever discussions were had as to the problems with the paved road, some city officials would make statements supporting the Beljons' position that the land under the disputed roadway did not belong to the city. In 1993, for example, the city law director stated in a written memorandum that if the city wanted to improve the existing road, it would be necessary to appropriate the underlying property.

3

{¶7} In 2002, the City of Aurora hired a private company to conduct a survey of the area surrounding the disputed span of Pioneer Trail Road. The results of the survey confirmed that the existing paved road did not coincide with the planned right-of-way on the 1927 subdivision plat. Specifically, the survey showed that the disputed stretch of road ran through the southern portions of sublots 318 through 322. Moreover, since the disputed stretch lay north of where the planned right-of-way was meant to be built, four sublots which were intended to abut the southern edge of the right-of-way, 381 through 384, did not directly abut the existing road.

{¶8} While all of the surrounding property was held by Jon and Eleanor Beljon, the fact that the four sublots did not abut the existing paved roadway did not cause any problems regarding the actual use of the land. However, in July 2002, Eleanor began to convey the sublots to her children. First, she transferred sublots 320 and 322 to William Beljon. Second, she transferred sublot 383 to Robert Beljon. Finally, she transferred sublots 318, 319, 321, 381, 382, and 384 to three of her daughters and two of her sons.

{¶9} Approximately two years following these transfers, the five Beljon siblings formed Beljon One, LLC, appellant, and conveyed their respective interests in the six cited sublots to that entity. William Beljon, the second appellant, has served as the president of Beljon One since its inception.

{¶10} In July 2008, Robert Beljon attempted to transfer his interest in sublot 383 to his brother, William Beljon. A short time later, however, Robert Beljon filed for federal bankruptcy. Richard A. Wilson was appointed trustee of Robert's assets, and this led to the nullification of the transfer of ownership of the sublot. Upon regaining control of the property, Trustee Wilson discovered that sublot 383 was landlocked due to the location

4

of the existing Pioneer Trail Road. Accordingly, Trustee Wilson initiated the underlying civil action against William Beljon and the City of Aurora. As the case went forward and discovery was had, Beljon One, LLC was added as a party defendant.

{¶11} In its complaint, Trustee Wilson alleged that it was entitled to have access to the existing roadway in order to protect the fair market value of sublot 383. Thus, he sought from the two Beljon defendants an easement by necessity across sublots 319 and 320. As to the City of Aurora, the complaint alleged that the lack of access resulted in an improper taking of sublot 383. In his amended complaint, the trustee requested a writ of mandamus to compel the city to institute appropriation proceedings

{¶12} In conjunction with its answer, the City of Aurora asserted a counterclaim against Trustee Wilson and cross-claims against the Beljon defendants. In relation to the existing Pioneer Trail Road, the City of Aurora sought a declaratory judgment that it was entitled to continue to use the roadway as a public street under theories of adverse possession or prescriptive easement. The Beljon defendants also raised counterclaims and cross-claims in their answer. Under their declaratory judgment claim, they sought a determination that the city's prior use of the land for the existing road had always been by permission, and that they had the right to withdraw that permission and required the city to build the right-of-way contemplated under the subdivision plat. They also raised claims sounding in unconstitutional taking of property, trespass, and nuisance.

{¶13} After the parties engaged in lengthy discovery, the City of Aurora moved for summary judgment on all of its pending claims and all claims asserted against it. As to its claims of adverse possession and prescriptive easement, the city maintained that its use of the disputed stretch of Pioneer Trail Road for a public thoroughfare has been

5

ongoing continuously since 1900. In support, the city attached to its motion an affidavit of the surveyor who had conducted the 2002 investigation concerning the location of the existing roadway in comparison to the planned right-of-way in the subdivision plat. In light of the affidavit, the city asserted that its right of ownership or ability to use the land under the roadway had vested in 1921. In addition, in regard to the Beljon defendants' claims against it, the city separately argued that the claims were barred either under the governing statutes of limitations or the terms of a settlement which had been reached in a prior lawsuit between Beljon One and the city.

{¶14} In responding to the summary judgment motion, the Beljon defendants did not attempt to refute the factual assertions in the surveyor's affidavit. Instead, they only contended that the facts of the case were too convoluted to warrant summary judgment on any of the pending claims.

{¶15} The city's summary judgment motion was initially reviewed by a trial court magistrate. After hearing oral arguments from all four parties, the magistrate rendered a decision in which he recommended that the city be granted final judgment on all of its pending claims and all claims asserted against it. As to its two claims against the Beljon defendants, the magistrate concluded that the city's evidentiary materials were sufficient to satisfy all elements of adverse possession and prescriptive easement. Based upon this, the magistrate further held that, since the Beljon family did not acquire its interest in the sublots until 1949, the city's use of the roadway property was not derived from the family's permission. Regarding the Beljon defendants' other claims against the city, the magistrate accepted the city's "settlement" and "statutes of limitations" arguments. Last, the magistrate concluded that Trustee Wilson was not entitled to a writ of mandamus to

6

compel the city to initiate an appropriation action as to sublot 383 because the city did not have any legal duty to do so.

{¶16} After Trustee Wilson and the Beljon defendants filed separate objections to the magistrate's summary judgment analysis, the trial court released a judgment in which it held that the city was not entitled to prevail on its adverse possession claim. As to that claim, the trial court found that the city's evidentiary materials did not establish that its use of the existing road had been exclusive during the twenty-one year period. However, since "exclusive use" was not an element for a prescriptive easement, the trial court upheld the summary judgment determination on that claim. Furthermore, the trial court adopted the magistrate's analysis as to all pending claims against the city.

{¶17} Following the issuance of the trial court's ruling, the magistrate conducted an evidentiary hearing as to all remaining claims. The City of Aurora did not participate in this hearing in any respect. As a result, the Beljon defendants moved the trial court to dismiss the city's adverse possession claim. However, the court never expressly ruled on the motion to dismiss.

{¶18} In his second decision after the hearing, the magistrate found that Trustee Wilson had failed to prove that he was entitled to an easement across the sublots of the Beljon defendants in order to have access to the existing road. Hence, the magistrate recommended that judgment be entered in favor of the Beljon defendants on Trustee Wilson's two claims. Despite this, the Beljon defendants filed objections to the second decision, challenging certain findings of fact. In its separate judgment as to the issues tried in the evidentiary hearing, the trial court overruled the objections of both the Beljon defendants and Trustee Wilson, and entered judgment against the trustee on his claims

for the easement. In addition, the trial court expressly held that there was no just cause for delay under Civ.R. 54(B).

{¶19} At the time the trial court issued its ruling on the city's summary judgment motion, the Beljon defendants had requested that a 54(B) determination be made as to the disposition of the city's claims for relief. Although the court did not grant this request when it ruled upon the objections to the magistrate's summary judgment analysis, it did reconsider the point after releasing its separate judgment on the trustee's two easement claims. In a third judgment, the trial court made a finding of no just cause for delay as to the summary judgment ruling.

{¶20} In appealing both the summary judgment ruling and the judgment on the trustee's easement claims, the Beljon defendants have asserted four assignments for review:

{¶21} "[1.] The trial court erred to the prejudice of defendants-appellants William Beljon and Beljon One, LLC in granting defendant/cross-appellant City of Aurora's motion for summary judgment determining the existence of a prescriptive easement for public use across appellants' land and dismissing appellants' cross-claims.

{¶22} "[2.] The trial court erred to the prejudice of defendants-appellants William Beljon and Beljon One, LLC in adopting the findings of fact and conclusions of law contained in the magistrate decision granting defendant/cross-appellant City of Aurora's motion for summary judgment determining the existence of a prescriptive easement for public use across appellant's land and dismissing appellants' cross-claims.

{¶23} "[3.] The trial court erred to the prejudice of defendants-appellants in denying their motion to dismiss the remaining claims of defendant/cross-appellant City

8

of Aurora.

{¶24} "[4.] The trial court erred to the prejudice of defendants-appellants in overruling their objections to the magistrate's findings of fact as contained in the magistrate decision filed February 14, 2012."

{¶25} Although the Beljon defendants have raised two assignments concerning the "prescriptive easement" issue, they have only presented one argument in support of both. Essentially, they maintain that the city was not entitled to summary judgment on its prescriptive easement claim because its evidentiary materials were not sufficient to satisfy all elements for such an easement. According to them, the magistrate and the trial court should have rejected the affidavit of the city's surveyor because it was not based upon proper documentation and only set forth a series of conclusory statements.

{¶26} In reviewing a summary judgment ruling, an appellate court is required to consider the matter de novo, and cannot show any form of deference to the trial court's analysis. *Kordel v. Occhipinti*, 11th Dist. Lake No. 2007-L-163, 2008-Ohio-6770, ¶8. As to the general standard to be applied under Civ.R. 56, this court has recently noted:

{¶27} "'Summary judgment is appropriate when the moving party establishes the following: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor.' *Lawrence v. Jiffy Print, Inc.*, 11th Dist. No. 2004-T-0065, 2005 Ohio 4043, ¶6." *Pringle v. Forum Health*, 11th Dist. Trumbull No. 2008-T-0131, 2013-Ohio-537, ¶11.

9

**{¶28}** "The Supreme Court stated in *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 1996 Ohio 107, 662 N.E. 2d 264, that:

**{¶29}** "'(* * *) the moving party bears the initial responsibility of informing the trial court of the basis for the motion, *and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim*. The "portions of the record" to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleading, depositions, answers to interrogatories, etc., that have been filed in the case. (* * *).' (Emphasis sic.). *Paugh v. P.J. Snappers*, 11th Dist. Trumbull No. 2004-T-0029, 2005-Ohio-701, ¶15-16.

**{¶30}** Under Ohio law, prescriptive easements are not generally favored because it has the effect of depriving the property owner of his rights in the land without any compensation. *Fitzpatrick v. Palmer*, 186 Ohio App.3d 80, 2009-Ohio-6008, ¶25 (4th Dist.). Nevertheless, our state has traditionally recognized that the public can acquire an easement by prescription even when there is no official acceptance or private dedication. *J.F. Gioia, Inc. v. Cardinal American Corp.*, 23 Ohio App.3d 33, 38, (8th Dist.1985) citing *Railroad Co. v. Roseville*, 76 Ohio St. 108, 117-118 (1907). It is equally well-settled that public roads and streets can be established by the "prescription" method. *State ex rel. A.A.A. Investments v. City of Columbus*, 17 Ohio St.3d 151, 152 (1985).

**{¶31}** The public's ability to acquire the right to use a road is predicated upon the principle that "'public easements, as well as others, may be shown by long and uninterrupted use and enjoyment, upon the conclusive legal presumption from such enjoyment, that they were, at some anterior time, laid out and established by competent

10

authority.'" *Roseville*, 76 Ohio St. at 117, quoting *Reed v, Inhabitants of Northfield*, 30 Mass. 94, 13 Pick. 94, 23 Am. Dec. 662. In other words, "a landowner who forebears from effectively disrupting use of his property by his neighbor or the general public eventually accedes to the continuation of that same use." *J.F. Gioia*, 23 Ohio App.3d at 38.

{¶32} "To prevail, a party asserting a prescriptive easement must show that their use of the property is: (1) open, (2) notorious, (3) adverse, (4) continuous, and (5) for a period lasting 21 or more years. * * *. The burden of establishing the existence of an easement rests with the party claiming the right to use. * * *." (Citations omitted.) *McDowell v. Zachowicz*, 11th Dist. Ashtabula No. 2010-A-0033, 2011-Ohio-3626, ¶15. Given the serious adverse effect which a finding of a prescriptive easement can have upon the property owner's rights, the foregoing elements must be proven by clear and convincing evidence. *J.F. Gioia*, *supra*, at 37.

{¶33} In this case, as part of his analysis of the city's evidentiary materials, the trial magistrate found that the disputed stretch of the existing roadway had been used as a public thoroughfare since at least 1900. Therefore, in relation to the "twenty-one year" element for a prescriptive easement, the magistrate concluded that the period of the use of the land for the road had begun to run in 1900.

{¶34} Although not expressly stated in the magistrate's legal analysis, his finding regarding when the public began to employ Pioneer Trail Road as a public street was based solely upon an affidavit in the evidentiary materials submitted by the city with its motion. The maker of the affidavit was Christopher Courtney, a professional engineer and surveyor. After stating his credentials as a surveyor, Courtney averred that, in

11

December 2001, his private firm was hired by the city to conduct a basic survey of the land surrounding Pioneer Trail Road and the 1927 planned subdivision. Courtney further asserted that, as part of his work for the city, he personally conducted an extensive review of the history of the disputed road, and conducted an extensive field survey of the land encompassing the road and the planned subdivision. His affidavit then concluded with the following two averments:

{¶35} "8. As a result of the aforementioned review and field work it is my opinion that Pioneer Trail Road has remained in the same location since at least 1900.

{¶36} "9. As a result of the aforementioned review and field work it is my opinion that Pioneer Trail Road has remained open for public travel since at least 1900."

{¶37} Accompanying the Courtney affidavit were copies of the March 2002 survey documents that his firm produced for the city. Also attached was a copy of a 1900 map of Aurora Township, obtained from the 1900 Tax Maps for Portage County. According to Courtney, the map shows Pioneer Trail Road going across the disputed area.

{¶38} Taken as a whole, Courtney's averments constituted some evidence pertaining to each of the five elements for a prescriptive easement. Despite the fact that the nature of "public travel" in 1900 was significantly different than the modern "automobile" era, the key point is that the disputed roadway was being used on a regular basis by individuals other than the current property owner in a mode consistent with traveling in that era. Thus, since the roadway was subject to "public" use, that use was clearly open and notorious. Furthermore, because the public's use of the existing road would have been inconsistent with the rights of the property owner, the use would

12

be considered "adverse." *See McDowell*, 2011-Ohio-3626, at ¶28. Finally, given Courtney's averment that the roadway has remained open to the public since at least 1900, the use has been continuous for more than the required 21 years.

{¶39} In their initial response to the city's summary judgment motion, the Beljon defendants did not present any evidentiary materials directly challenging the Courtney affidavit; in fact, their response brief contained no discussion of the affidavit. After the court magistrate rendered its decision in favor of the city, the Beljon defendants raised three basic arguments in their objections, in which they asserted that the Courtney affidavit was not dispositive of the city's two claims. In re-asserting the arguments before this court, the Beljon defendants first state that the affidavit had no true evidentiary value because it only contained a series of conclusory statements. According to the Beljons, Courtney failed to properly support his averments with copies of pertinent public records.

{¶40} As noted above, at the outset of his affidavit, Courtney made certain statements regarding his qualifications as a surveyor in the state of Ohio. In light of these statements, Courtney is deemed an expert witness under Evid.R. 702. More importantly, the Beljon defendants' contention that Courtney failed to reference any relevant public records supporting his opinion is simply incorrect. Attached to the affidavit is a copy of a 1900 Aurora area map, taken from the 1900 Tax Maps for Portage County. Although no names are provided for the roadways shown on this map, it can still be discerned that there was an existing road that was in the same general location as the present Pioneer Trail Road. In addition, Courtney specifically averred that he and a city official had extensively reviewed the history of Pioneer Trail Road and

13

had performed an extensive field survey.

{¶41} Even though Courtney never stated what other evidence he found on the disputed roadway during his historical review, it cannot be said that he failed to provide documentation in support of his expert opinion. That is, the 1900 area map supports his conclusion that Pioneer Trail Road has been in existence, in one form or another, since that year. Under these circumstances, the lack of any additional documentation would only raise a question concerning the credibility of Courtney's opinion, a point which cannot be considered as part of a summary judgment analysis.

{¶42} During the entire summary judgment proceeding at the trial level, the Beljon defendants never presented a countering affidavit of a different surveyor who reached a conflicting conclusion as to when the disputed roadway was first used by the public. Therefore, since the Courtney affidavit had some probative value on the elements for a prescriptive easement, the magistrate and trial court correctly relied upon the affidavit in deciding whether to grant summary judgment.

{¶43} Under their second argument, the Beljon defendants submit that the Courtney affidavit was not sufficient to warrant summary judgment in the city's favor because there were conflicting evidence concerning whether the disputed roadway remained in the same location throughout the entire period it has been used by the public. In support, they assert that William Beljon testified during his deposition that the roadway's location has gradually changed through the years that his parents owned the surrounding tract.

{¶44} The transcript of William's deposition reveals the following dialogue:

{¶45} "Q. Do you have any knowledge of the pavement ever being located in a

different physical location?

{¶46} "A. I'm sure it's changed a little bit over the years, but a drastic change, I don't have any knowledge of that.

{¶47} "* * *

{¶48} "Q. Do you have any knowledge of where the gravel road was located ever being moved to a different location?

{¶49} "A. It's a similar question you asked before. I don't know. You know, it might have moved here and there a little bit but I don't know think it moved that much.

{¶50} "* * *

{¶51} "Q. * * * Do you have any basis to dispute that where the pavement is located currently on your property, that it has ever been in any other location other than where it currently is? * * *

{¶52} "A. Like I said before, [it] might have moved back and forth a little bit. As far as my knowledge, it's been there.

{¶53} Even when it is construed in a manner most favorable to the Beljon defendants, William's testimony does not support a finding that the location of the disputed roadway was ever *materially* altered through the years. At best, he was stating that, although the bed of the road may have moved slightly through the course of time, the roadway was still located on the same basic area of land. Thus, Willliam's testimony did not conflict with Courtney's averments.

{¶54} Under their third argument, the Beljon defendants maintain that the Courtney affidavit was not entirely dispositive of the prescriptive easement claim because it did not address the issue of whether the city should be estopped from relying

15

upon its "easement" theory. As part of their initial response to the motion for summary judgment, the Beljon defendants presented a number of evidentiary items tending to show that, at various times after the 1960's, certain city officials had made statements acknowledging that the city's use of the disputed roadway was solely by permission of the Beljon family, and that the city would have a duty to install a new stretch of road in accordance with the 1927 subdivision plat if the family ever rescinded its permission. Essentially, the Beljon defendants contend that, in light of the city officials' acknowledgement that their family had superior title to the land under the roadway, they were not entitled to continue to use the land through a prescriptive easement.

{¶55} Under Ohio law, a prescriptive easement cannot be extinguished by subsequent inconsistent acts of the user. *Wood v. Village of Kipton*, 160 Ohio App.3d 591, 2005-Ohio-1816, ¶25. "After the prescriptive easement results from adverse use, the user does not forfeit the established easement by acting as if it did not exist." *J.F. Gioia*, 23 Ohio App.3d at 40.

{¶56} Pursuant to the uncontested averments in Courtney's affidavit, the city's prescriptive easement was fully established by 1921. As a result, the Beljon defendants' evidentiary items as to the inconsistent statements of city officials 60 or 70 years later were rendered irrelevant. The same is also true of their evidence concerning their parents' belief that they held paramount title to the underlying land and the city's use was based solely upon their permission. While evidence as to the property owner's "permission" would have been relevant if it pertained to events prior to 1921, the Beljons' evidentiary materials only related to events after 1940. Thus, their materials were insufficient to raise a genuine issue of fact regarding whether the city should be

16

estopped from maintaining its prescriptive easement claim.

{¶57} In conjunction with their "estoppel" argument, the Beljon defendants also contend that the prescriptive easement claim was barred under the terms of a prior consent judgment entry. This contention is predicated upon a separate declaratory judgment action which Beljon One, LLC brought against the City of Aurora in January 2006. The subject matter of this prior case concerned Beljon One's planned development of approximately 70 acres of property located behind four of the family sublots. Before the proceeding could come to trial, the parties reached a settlement which was incorporated into a consent judgment entry. As part of the agreement's primary terms, the city agreed to approve any submitted plan for the development of the land so long as certain requirements were met.

{¶58} The consent judgment entry also contained a "release" clause. The first sentence of that clause provided that, in consideration for the city's general authorization of the planned land development, Beljon One agreed to release and discharge the city and its agents from all possible claims "resulting from [Beljon One's] attempt to develop the Property, any denial of any rezoning request, the placement of the R-2 zoning district designation on the Property, any denial of any site plan, any denial of any variance, and other administrative or quasi-judicial proceeding taken or omitted by the City * * *." The remainder of the term then stated:

{¶59} "[Beljon One] hereby intends this Consent Judgment Entry to act as a full settlement and release of any dispute, claim or cause of action which [Beljon One] currently has against the City and its Affiliates, other than to the extent that supplemental relief or enforcement of [Beljon One's] rights pursuant to this Consent

17

Judgment Entry is required in the future. This paragraph shall be deemed to act as a release of all past or present claims that may have arisen from the allegations contained in the Complaint or any allegations that could have been asserted in the Complaint, whether such claims are currently known, unknown, foreseen or unforeseen."

{¶60} Given that Beljon One was the sole plaintiff in the prior case and had filed the cited "Complaint" against the city, the plain and unambiguous language of the clause supports the conclusion that the release of all possible claims was only applicable to Beljon One. The quoted clause simply does not refer to any release of legal claims by the city. Hence, even if the subject matter of the prior action was sufficiently broad to encompass the dispute regarding Pioneer Trail Road, the "release" clause in the consent judgment entry would not bar the city's prescriptive easement claim in the underlying case.

{¶61} In addition to the three arguments that the Beljon defendants raised before the trial court, they have asserted a new argument relating to the probative value of the Courtney affidavit. They postulate that the affidavit cannot form the basis of any judgment in the city's favor because it is evident that the trial court disregarded Courtney's averments in rendering its final decision on the summary judgment motion. In support of this point, they emphasize that, in reversing the magistrate's ruling on the city's adverse possession claim, the court concluded that the city did not establish that the public's use of the disputed roadway for the 21 year period had been exclusive. According to the Beljons, the trial court could only reach this conclusion by accepting their evidence about events after 1940 and, thus, rejecting Courtney's averments.

{¶62} In his affidavit, Courtney did not make any assertions as to whether the

18

public's use of the disputed roadway was exclusive during the period from 1900 through 1921. Thus, the trial court's ruling to not grant summary judgment in favor of the city on its adverse possession claim could have been based upon the fact that Courtney simply never addressed the exclusivity issue. Moreover, the lack of any reference to that particular issue would have no adverse effect on the probative value of Courtney's averments. To this extent, even though the trial court did not expressly discuss the evidentiary materials in its final summary judgment decision, the record still supports the conclusion that the court relied on the Courtney affidavit in ruling in the city's favor on its prescriptive easement claim.

{¶63} In summation, the Beljon defendants have failed to demonstrate that the Courtney affidavit should have been rejected as lacking any probative value for summary judgment purposes. Rather, the affidavit constituted some evidence upon which a trier of fact could find that the city carried its burden of proof on all elements of its prescriptive easement claim. Furthermore, in responding to the city's summary judgment motion, they failed to present any evidentiary materials that created a factual dispute as to any element of that claim. Therefore, since the City of Aurora was entitled to prevail on its prescriptive easement claim as a matter of law, the granting of summary judgment was legally proper. The Beljon defendants' first two assignments of error are without merit.

{¶64} Under their third assignment, the Beljon defendants challenge the ultimate disposition of the city's adverse possession claim. First, they submit that, since the trial court never ruled upon their motion to dismiss that claim, it must be presumed that the court intended to overrule the motion. Second, they argue that the denial of the motion

19

was inappropriate under Civ.R. 41 because the city failed to attend the final evidentiary hearing and present evidence on its adverse possession claim.

{¶65} As noted above, in issuing both of the appealed judgments, the trial court made an express finding under Civ.R. 54(B) that there was no just cause for delay. In light of these findings, the trial court clearly indicated that it was not going to render a final decision as to all claims between the parties before allowing the Beljon defendants to appeal its judgments as to the city's prescriptive easement claim and the trustee's easement claims. The pending matters would include the city's adverse possession claim.

{¶66} At this stage of the underlying litigation, the trial court has only overruled the city's motion for summary judgment on its adverse possession claim. Such a ruling is not considered a final appealable order. *Campbell v. Massucci*, 190 Ohio App.3d 718, 2010-Ohio-4048, ¶16 (11th Dist.). For whatever reason, the trial court chose not to go forward on the Civ.R. 41 motion to dismiss. Given that the trial court has discretion under Civ.R. 54(B) to allow an immediate appeal as to the disposition of some claims while not rendering a final ruling as to others, the merits of its decision to delay its ruling on the motion to dismiss cannot be contested before this court. Therefore, since the trial court has not rendered a ruling on the motion to dismiss, the Beljon defendants' third assignment lacks merit.

{¶67} Under their fourth assignment, the Beljon defendants submit that, in ruling upon the final merits of the trustee's easement claims, the trial magistrate made certain findings of fact which were not supported by the evidence submitted during the final evidentiary hearing. They further submit that the disputed findings were prejudicial to

20

them to the extent that they pertained to whether the city was entitled to a prescriptive easement. For example, they assert that there was no evidence to support the finding that the land designated for the planned right-of-way under the subdivision plat has been used for agricultural purposes throughout the years.

{¶68} As to this point, the trial record shows that the decision to grant judgment in favor of the city for a prescriptive easement was based entirely upon its motion for summary judgment. In this respect, the "prescriptive easement" decision was rendered before the final evidentiary hearing was held. As a result, any factual finding made after the final hearing could not have had any adverse effect upon the merits of the summary judgment decision. For this reason, the Beljon defendants' final assignment does not have merit.

{¶69} In pursuing a cross-appeal from the summary judgment determination, the City of Aurora has raised one assignment of error for consideration:

{¶70} "The trial court erred when it failed to grant summary judgment in favor of the City with regard to its adverse possession claim."

{¶71} Consistent with our legal discussion under the Beljon defendants' third assignment, this court concludes that the merits of the city's cross-assignment are not properly before us at this time. Again, the denial of a motion for summary judgment is not a final appealable order. *Campbell*, 2010-Ohio-4084, at ¶16. As a result, the trial court's ruling on the adverse possession claim will not be appealable until the court has disposed of all pending claims or has entered a specific final judgment in relation to that particular claim. In other words, the scope of review in this appeal is limited to those claims regarding which the trial court has already issued a final disposition.

21

{¶72} Pursuant to the foregoing, each of the respective assignments raised in the Beljon defendants' direct appeal and the City of Aurora's cross-appeal is without merit. Accordingly, it is the judgment and order of this court that the judgments of the Portage County Court of Common Pleas are affirmed in all respects.

TIMOTHY P. CANNON, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.