GEORGE v. THE WM. C. JOHNSON CANDY CO.

*Directed verdict error—Evidence establishing essential facts —Action on account for merchandise—Defense of gambling devices—Punch board assortments.*

1. It is error for the trial court to direct a verdict for the plaintiff at the close of all the evidence, if there is any evidence, no matter how slight, tending to prove all the facts essential to establish the defense tendered by the pleadings.

2. In an action to recover the purchase price of merchandise sold and delivered, where the defense is that the merchandise consisted of devices known as "punch board assortments" which were sold for gambling purposes, it is error for the trial court, at the close of all the evidence, to direct a verdict for the plaintiff, where there is some evidence tending to prove the merchandise consisted of devices sold for gambling purposes, and that plaintiff, knowing of the illegal design of defendant, aided in it.

(Decided June 30, 1922.)

ERROR: Court of Appeals for Wayne county.

*Messrs. Horn & Merchant* and *Messrs. Weygandt & Ross,* for plaintiff in error.
*Messrs. Critchfield & Etling,* for defendant in error.

WASHBURN, P. J. In the court below, this was an action in which The Wm. C. Johnson Candy Company of Cincinnati sought to recover a judgment against Louis George for merchandise sold and delivered.

The answer admitted the purchase and receipt of the merchandise, and as a defense alleged that the merchandise consisted of gaming and gambling

devices known as "punch board assortments," which were sold for gaming and gambling purposes.

At the close of all the evidence, George moved the court to direct a verdict in his favor, and The Johnson Candy Company also moved the court to direct a verdict in its favor. Thereupon, before either of these motions was passed upon by the court, defendant George withdrew his motion for a directed verdict in his favor, and the trial court after due deliberation granted the motion of The Johnson Candy Company and directed a verdict in its favor for $2,495.33. This action of the trial court in directing a verdict for the plaintiff below is the error argued in this court, and is relied upon for a reversal of the judgment.

The rule of law by which the trial court is governed when a motion to direct a verdict for the plaintiff is made is well established in Ohio. No matter how slight it is, if there is *any* evidence *tending* to prove all the facts essential to establish the defense tendered by the pleadings, a verdict cannot be properly directed for the plaintiff; it is only where the defendant offers *no* proof as to an allegation of fact which is material and necessary to establish the defense that the court can direct a verdict for the plaintiff.

If there is some evidence tending to prove the essential facts constituting the defense, no matter how much evidence there may be tending to disprove such facts, the court cannot properly direct a verdict for plaintiff, for it is not the province of the court, on such a motion, to weigh the evidence or to take into consideration evidence of facts tending to disprove the defense. The motion ten-

ders a question of law only, and the power of the
court is limited to a determination of that question,
and in determining that question every fact that
the evidence, and all reasonable inferences from it,
tends to establish, must, for the purposes of the
motion, be taken as fully established.

The trial judge may be fully convinced that if
the jury returns a verdict for the defendant it will
be his undoubted duty to set aside such finding and
grant a new trial; still he may not direct a verdict
for the plaintiff if there is any evidence, whether
contradicted or not, tending to prove all the essen-
tial elements of the defense tendered by the plead-
ings. *Ellis & Morton* v. *The Ohio Life Ins. & Tr.
Co.*, 4 Ohio St., 628, at p. 648; *Russell, Admr.*, v.
*The Fourth National Bank*, 102 Ohio St., 248, and
*C., C. & C. Rd. Co.* v. *Crawford, Admr.*, 24 Ohio
St., 631.

It is the established public policy of this state to
preserve the right of trial by jury from encroach-
ment by the courts. *Gibbs* v. *Village of Girard*, 88
Ohio St., 34; *Cincinnati Street Ry. Co.* v. *Snell*, 54
Ohio St., 197; *Stugard, Admr.*, v. *Pittsburgh, Cin-
cinnati, Chicago & St. Louis Ry. Co.*, 92 Ohio St.,
318; *Railway Co.* v. *Murphy, Admr.*, 50 Ohio St.,
135; *Ohio Electric Ry. Co.* v. *Weingertner*, 93 Ohio
St., 124, and *Marietta & Cincinnati Rd. Co.* v. *Picks-
ley*, 24 Ohio St., 654.

The question presented for this court to deter-
mine is, therefore, whether or not there was any
evidence in this case tending to prove that the arti-
cles purchased by George were gaming or gamb-
ling devices, and sold for such purposes, the vendor

knowing of the illegal design of the vendee and in some way aiding or participating in that design.

The articles sold in this case consisted of cartons, each containing prizes consisting of boxes of candy, and a punch board advertising such prizes thereon. Each punch board, with the prizes that went with it, was packed and shipped in a separate carton, which contained nothing else, and was billed as "assortments" but sued upon as "merchandise," the size of the punch board being specified, and the price being entire, including both punch board and candy.

An amended petition was filed in which the articles sold were denominated as "Merchandise, Package Candy," there being no reference to the punch boards or their size, and the price stated for each shipment not yet paid for was a little less than stated in the original petition, the reduction being admittedly for the omitted punch boards.

The punch board was operated by the player paying a stipulated price for the privilege of punching the board, and if the number in the hole he punched was not a prize number he received nothing for the price paid, but if the hole contained a prize number he received one of the prizes packed and shipped in the carton with the punch board.

That the punch board was a device suitable and appropriate for no other purpose than gambling is too plain for argument. The trial judge in disposing of the motion found "that the punch board is a gambling device, pure and simple, and that it could not be used for any other purpose except for gambling purposes," but that "the contents of the carton is not necessarily a gambling device of it-

self as a whole" because the one receiving the punch boards "could use them by placing other commodities with them and selling them to his customers, and could sell the candy entirely independent of the punch boards," and reached the conclusion that there was no evidence tending to prove that The Johnson Candy Company knew of the admittedly immoral or illegal design of George and in any way aided or participated in that design. On that phase of the case what does the record disclose?

The negotiations between the parties opened with the following letter from George on June 12:

"*Orrville, Ohio, June* 12, 1920.

"WM. C. JOHNSON CANDY CO.,

"Cincinnati, Ohio.

"GENTLEMEN:

"I wish to advise you that I am now jobbing candy and would like to find out something about your line. Also advise me if you are putting up punch boards or not. Please furnish me with price on your Cherries packages with the punch board and without. I am now getting bunch of punch board deals from The Miami Candy Co., Dayton, averaging about $1,500 weekly. Let me hear from you.

"Yours truly,

"(Signed)  LOUIS GEORGE."

The Johnson Candy Company replied to that letter on June 15 as follows:

"*Cincinnati Ohio, June 15, 1920.*

"MR. LOUIS GEORGE,

   "Hurd House Hotel,

      "Orrville, Ohio.

"DEAR SIR:

"We have your favor of the 12th, and regret we have no 'printed' price list available to send you, as we have not issued one during the past three years as our old accounts and such new accounts as we have been able to serve have regularly bought our entire output as quickly as produced.

"We are serving a limited number of 'operators' in punch board assortments, the assortments being built or assembled to suit the individual needs of each operator and to meet the requirements of the trade in the territory in which the operators work.

"Your inquiry reaches us just at the time when we can take on additional business with the expectation of rendering satisfactory service—and service is very important in the punch board game.

"We would like very much to show you our entire line and name you prices, but as it is impracticable to bring our entire line to you, may we ask you to come to the line as it will not cost us any more to pay your expenses to Cincinnati and return than it would cost us to call on you at Orrville and return to Cincinnati.

"If this suggestion is agreeable, we extend to you a cordial invitation to call on us at our expense and at any time in the near future that may suit your convenience.

"If you are selling the amount of merchandise as stated in your letter, it will undoubtedly be worth your while to see our entire line and build your own assortments, in this work we shall be very glad to co-operate with you to the best of our ability, and we think we have some ability in this work.

"If, after seeing our extensive line and then decide it would not be to your best interests to buy any of our merchandise, let it be frankly understood that you will not be under any obligation to us, but that we will cheerfully pay the expenses to Cincinnati and return to Orrville.

"We shall be pleased to hear from you upon receipt of this, and thanking you for having written us, we are

"Yours very truly,
"THE WM. C. JOHNSON CANDY CO.,
"(Signed)     Wm. C. Johnson."

Not receiving a prompt reply to this invitation the Candy Company, four days later, June 19, wrote George, again inviting him to come to Cincinnati, and saying among other things: "We have found through experience that while the punch board game is pretty generally the same throughout the country, there is a difference in local requirements. Some combinations that might sell well in one locality would be a comparative failure in another territory nearby," and that it would be to his advantage to secure his merchandise "from the manufacturer who is, at present, specializing in that line."

Thereafter, George went to Cincinnati, placed an order and began doing business with the Candy Company, his entire business with them, however,

consisting of purchases of "assortments," with which was packed in each carton the appropriate punch board.

The dealings continued until January 24, 1921, during which time he purchased several thousand dollars worth of "assortments" and paid for all of them except the amount sued for.

In one of his letters George instructs the Candy Company to "make the following changes in the Moonlight deal: take off two satin packages from the deal and add entire Beauty assortment to the Moonlight deal and *fix the numbers on the board to win candy as you have on the Moonlight deal and give one satin package with the last punch.*"

There was also evidence at least tending to prove that the Candy Company had punch boards in stock, which were exhibited to George at the time of his first visit, and also photographs of combinations or assortments with punch boards; the evidence also disclosed that the Candy Company furnished to George punch board labels mounted on cards to enable him to show the number and character of premiums on each punch board, such cards having the stamp of the Candy Company thereon; and there was also evidence tending to show that the Candy Company knew that George was not dealing in candy, as such, but only in connection with punch boards, and that he had extensively used other articles than candy as prizes.

The record discloses evidence tending to prove these facts independent of the testimony of George, and we have no difficulty in reaching the conclusion that there was evidence tending to prove that the sale of the "assortments" was so connected with and dependent upon the punch boards as to consti-

tute one inseparable transaction; that The Johnson Candy Company fully understood the character of the business of George and had knowledge of the illegal design of George in reference to articles he purchased of the company; that, if the company itself was not directly engaged, in part at least, in the same business, it did, with full knowledge, aid and encourage if not participate with George in that design; and that, therefore, there was some evidence as to the defense plead which required the court to submit the case to the jury.

If the jury should find the facts as we hold the evidence tends to prove them, The Johnson Candy Company could not recover in this case: *Skiff v. Johnson*, 57 N. H., 475; *Spurgeon v. McElwain*, 6 Ohio, 442; *Tatum v. Kelley*, 25 Ark., 209, 94 Am. Dec., 717; *Hill v. Spear*, 50 N. H., 253; *Gaylord v. Soragen*, 32 Vt., 110; *Webster v. Munger*, 8 Gray (74 Mass.), 584; *Standard Furniture Co. v. Van Alstine*, 22 Wash., 670, 51 L. R. A., 889; *Graves v. Johnson*, 156 Mass., 211, 15 L. R. A., 834, and *Hull v. Ruggles*, 56 N. Y., 424.

For error in directing a verdict for plaintiff, and rendering judgment thereon, the judgment is reversed and the cause remanded.

*Judgment reversed and cause remanded.*

PARDEE and FUNK, JJ., concur.