GEORGE v. THE WM. C. JOHNSON CANDY CO.

*Contracts—Candy prizes for punch boards—Gaming and gambling devices—Seller cannot recover from purchaser, when.*

A, to the knowledge of B, was engaged in the vending of gambling devices, consisting of punch boards and the prizes connected therewith, and desired to purchase such devices; B, a dealer in candy, knowing of such desire and illegal purpose of A, procured punch boards at the suggestion of A, and combined therewith boxes of candy as prizes, and sold same to A, with full knowledge of the latter's illegal purpose:

*Held:* B thereby so assisted, aided and encouraged A in his illegal purpose as to preclude B from recovering from A for such boxes of candy.

*Held:* The record in this action does not present a case of the sale of an article, which may or may not be used for an illegal purpose, where the seller simply knows that the purchaser intends an illegal use, and does nothing to aid, assist or encourage the purchaser in his illegal purpose except to sell the article, but, on the contrary, the record in this action presents a case where the seller, with full knowledge of the illegal purpose of the purchaser, actually furnishes all of the necessary articles and combines them into a gambling device for the purpose of enabling the purchaser to carry out his illegal purpose, under circumstances which make the seller an active and guilty cooperator with the purchaser in his contemplated violation of law.

(Decided April 14, 1924.)

ERROR: Court of Appeals for Wayne county.

*Messrs. Weygandt & Ross* and *Mr. Willis Horn,* for plaintiff in error.

Gaming, 27 C. J. §§ 295, 358.

*Messrs. |Critchfield & Etling,* for defendant in error.

WASHBURN, J. This is the third time that this case has been before this court. The evidence as to important facts being documentary, such evidence was, of course, the same upon all three trials, and the oral evidence given upon the three trials was the same as to material and controlling facts. The action was to recover for what was denominated merchandise, which the Johnson Candy Company, defendant in error, had sold to Louis George, plaintiff in error, and the defense was that the merchandise sued for consisted of gaming and gambling devices, known as "punch board assortments," which were sold for gaming and gambling purposes.

Upon the first trial, at the close of the evidence, the company asked the court to direct the jury to return a verdict in its favor for the full amount claimed, which was done, and that judgment was reversed by this court because the evidence did not warrant any such judgment. (16 Ohio App., 487.) In that opinion we reviewed and set forth the documentary evidence which led us to the conclusion, which we plainly indicated, that the so-called merchandise was gaming or gambling devices, which were purchased for gambling purposes, the Johnson Company knowing of such illegal design and aiding or participating therein, or, at least, that the sale was so connected with such illegal or immoral purpose as to be inseparable from it, and that therefore the claim made by George was a valid defense to the action.

Upon the second trial, at the close of all of the evidence, each party moved for a directed verdict in his favor, but before the motions were passed upon the motion by George was withdrawn and the case was submitted to a jury, which found a verdict in favor of the Candy Company for a part of the amount claimed.

That judgment was reversed by this court as being manifestly against the weight of the evidence (18 Ohio App., 114), the record showing that the motion by George for a judgment in his favor was withdrawn and the same was not passed upon by the court. In that situation we were not asked by George to render final judgment in his favor, although with our view of the law and facts we should perhaps have rendered such judgment.

The case was again tried (being the proceedings now under review), and, at the close of all the evidence, George asked the court to arrest the testimony from the jury and direct a verdict in his favor, for the claimed reason that the evidence disclosed an illegal transaction for which the Johnson Company had no right to recover. Immediately thereafter the Johnson Company asked the court to direct a verdict for it, ''on the ground that on the testimony there is no material dispute on the facts in the case and that the testimony shows no defense.'' And what afterwards transpired is disclosed in the record as follows: ''Thereupon, the court gave an oral opinion on the legal questions involved in said motions, and near the end of said oral opinion and *when the court was about to pass upon the motions,* counsel for defendant (George) requested the court to pass upon his motion, *that*

*he desired to make a further request of the court,* and the court thereupon stated that counsel might have any exceptions which he desired," and then proceeded to dispose of the motions by overruling the motion of George and granting the motion of the Johnson Company. Immediately thereafter counsel for George "requested the court to charge the jury the twelve written requests, which the defendant has handed to the court," which request was refused, and the court directed the jury to sign a verdict in favor of the plaintiff. Proper exceptions were saved.

We regard it as settled in Ohio that where each party asks for a directed verdict in his favor, and nothing further is said or done by them, a presumption arises that they intend to waive the right to a submission to a jury, and consent that the court shall decide the question of law and fact involved, but that such a presumption does not arise where the party whose request is denied thereupon asks to go to the jury upon the questions of fact. *Bank* v. *Hayes & Sons,* 64 Ohio St., 100; *Perkins* v. *Board of County Commrs.,* 88 Ohio St., 495; *Nead* v. *Harshman,* 103 Ohio St., 12.

Such being the settled law, if one of the parties indicates to the court his desire to avail himself of his right to have the questions of fact submitted to the jury, if his motion is denied, it is the duty of the trial court in passing upon motions so made to give to such party an opportunity to exercise the right which he has to make such request.

In this case it is apparent from the record, which we have quoted, that counsel for George desired to make such request, and that he indicated such de-

sire to the court when he interrupted the court "when the court was about to pass upon the motions" and stated to the court that "he desired to make a further request of the court." The court did not give counsel an opportunity to state such request, but said to counsel that he might have "any exceptions which he desired," and immediately passed upon both motions.

Before the court directed the jury to sign the verdict, counsel asked the court to charge the jury as he had requested, and the court refused to do so.

We are clearly of the opinion that under the circumstances there was no presumption that counsel for George intended to waive his right to a submission to the jury, nor to consent that the court should decide the questions of law and fact involved, and that therefore it was error for the court to direct a verdict for the plaintiff on the theory that George had waived a jury trial, if the record at that time presented a jury issue.

But counsel for George insist that before such error was made the court committed error in overruling their motion for a directed verdict in George's favor; that the controlling questions of fact were not in dispute and that they not only justified but required the court to grant their motion, and that therefore the judgment is contrary to law; and we are urged to reverse the judgment on that ground and to render the judgment in favor of George which it is claimed the trial court should have rendered on the motion of George for a judgment in his favor.

. What we have said in reference to the error of

the court in not giving George an opportunity to have his case submitted to the jury notwithstanding his request for a directed verdict in his favor is, of course, based upon the theory that the record presented a jury issue; such claim made after the court had overruled George's motion for judgment was not inconsistent with his motion made for a judgment, for the reason that if the controlling facts were undisputed, and under such controlling facts he was entitled to a judgment, his motion should have been granted without the court having to pass upon the facts as a jury, and he may now urge upon this court that the controlling facts were undisputed, entitling him to the judgment in his favor which the court below should have entered.

The trial court should not have entered a judgment in favor of George unless the evidence as to the essential and controlling facts which would give him a right to such judgment is undisputed in the record.

This is the first time we have been asked by George to render final judgment in his favor.

It will be noted that the Johnson Company, in making its motion for a judgment, based it upon the ground that on the testimony "there is no material dispute on the facts," and it will be noted also that upon the first trial the trial judge, who is the same judge who has tried this case each time in the court below, regarded the controlling facts as undisputed, and construed the law to be such as to entitle the Johnson Company to a judgment in its favor upon such facts. We revert again to the fact that upon all of the trials the

evidence as to the controlling facts was practically the same.

What are the controlling facts that should dispose of this controversy?

They are that George was engaged in the vending of gambling devices, consisting of a punch board and the prizes connected therewith; that the Johnson Company knew that he was engaged in such business, and that he desired to purchase gambling devices, to be sold and used for such purpose; that the Johnson Company, knowing of such immoral or illegal design or purpose of George, aided him or participated with him in that design, or that the contract of sale which the Johnson Company made with George was so connected with such illegal or immoral purpose or transaction as to be inseparable from it.

If these controlling facts are undisputed, then counsel for the Johnson Company were right in saying to the trial court that there was "no material dispute on the facts in the case."

The undisputed evidence is that George was engaged in such immoral and illegal business.

Did the Johnson Company have knowledge of that fact?

In the first letter that George wrote to the Johnson Company, which was the beginning of their business relations, he asked the Johnson Company to "advise me if you are putting up punch boards or not. Please furnish me with price on your Cherries packages with the punch board and without;" the Johnson Company answered, "We are serving a limited number of 'operators' in punch board assortments," and requested George to come

to Cincinnati for a conference; a few days later, not receiving a prompt reply to this invitation, the Johnson Company wrote again to George, saying among other things: "We have found through experience that while the punch board game is pretty generally the same throughout the country, there is a difference in local requirements. Some combinations that might sell well in one locality would be a comparative failure in another territory nearby," and that it would be to his advantage to secure his merchandise "from the manufacturer who is, at present, specializing in that line."

It is undisputed that George went to Cincinnati and had an interview with the president and chief officer of the Johnson Company, who testifies that in that interview he was told by George of the business in which he was engaged; that he knew that George was a punch board operator and was a prospective customer for punch board assortments; that when George was scheming to fix assortments to make the punch board operations a success, he (Johnson) did the best he could to aid in bringing about that success; that when George ordered a punch board assortment from the company it was understood that it was to consist of a punch board and the necessary prizes in connection therewith; that punch boards were a part of such assortments for the purpose of disposing of the candy, and enabled the Johnson Company to have more business and manufacture more candy; that during the transactions with George the Johnson Company sold punch boards to persons other than George, and that at the time George came there for the interview the company had punch boards

in its candy factory; that George, with the assistance of Johnson and the other employes of the Johnson Company, selected certain boxes of candy, which were to be used in connection with certain punch boards as prizes, and that such combinations were denominated and known thereafter in, their dealings with George as "assortments;" that each assortment was packed in a separate carton, which contained a punch board and the prize boxes of candy that went therewith, and that when George ordered a certain assortment it was shipped to him in a carton, the contents of which were a punch board and the prize boxes of candy to be used therewith; that the prices made to George therefor *included* the cost of the *punch board;* and that the punch board without the candy that went therewith was of no value to the company or anyone else.

It is undisputed that during these transactions George wrote the Johnson Company to make certain changes in a certain assortment known as the "Moonlight Deal," and to "fix the numbers on the board to win candy as you have on the Moonlight deal and give one satin package with the last punch." It is also undisputed that the Johnson Company furnished to George punch board labels mounted on cards to enable him to show the number and character of premiums on each punch board, said cards having the stamp of the Johnson Company thereon, and that the Johnson Company entered upon the bottom of such cards, in ink, figures showing the number of holes in the punch board that went with each assortment.

There is much other evidence, all pointing in

the same direction, but we have purposely omitted any reference to anything testified to by George, and have called attention only to matters which the Johnson Company admitted, either in writing or in testimony, and as to which there is absolutely no dispute in the record.

There is no dispute in the record as to the punch board being a gambling device, pure and simple, and it is conceded that it can be used for no other purpose, and that it cannot be used for that purpose *without the prizes that go therewith*, and that the company knew and fully understood these facts.

The fact that the boxes of candy could be sold and used separate from the punch boards is not important; they were not sold separately, or designed or intended to be used separately; the boxes of candy were the prizes which were sold with and intended and designed to be used with the punch boards; they were a necessary element in the operation of, and were intended to, and did, constitute a part of the punch boards.

It therefore appears from the undisputed evidence that George was engaged in the sale of a gambling device; that the Johnson Company knew that fact; that it furnished all of the necessary elements, assembled those elements, and so packed and related them as to constitute the whole a gambling device, and sold same to George, knowing the purpose for which it was to be used; that it therefore aided and encouraged him or participated with him in his immoral and illegal design, or, at least, the contract of sale which the Johnson Company made to George was so connected with such illegal or immoral purpose or transaction as to be inseparable from it.

As we understand the claim of counsel for the Johnson Company it is that admitting "that the punch boards and candy boxes together constitute a gambling device, which could not be used for any other purpose," and admitting that the Johnson Company "had knowledge that George intended to use said devices for gambling purposes," still the Johnson Company could recover for the price of the prizes or candy boxes unless it further appeared "that the Johnson Company participated in or assisted in the *actual use of the device.*"

We have indicated our view that the Johnson Company by furnishing the board and prizes, and combining them into a workable gambling device, and selling same to George, with full knowledge of the latter's illegal purpose, so assisted, aided and encouraged George in his illegal purpose as to defeat the Johnson Company's right to recover for the prizes which were a part of such gambling device, although the Johnson Company was not present participating in the *actual use* of such devices.

The Johnson Company, in view of what it did, must be held as a matter of law to have intended that the punch boards and prizes should be actually used *together* for gambling purposes, and when so used, according to its intention, the Johnson Company was assisting in such gambling although not actually present. The case is not one of the sale of an article, which may or may not be used for an illegal purpose, where the seller simply knows that the purchaser intends an illegal use, and does nothing to aid, assist or encourage the purchaser in his illegal purpose, except to sell the

article, but is a case where the seller, with full knowledge of the illegal purpose of the purchaser, actually furnishes all of the necessary articles and combines them into a gambling device for the purpose of enabling the purchaser to carry out his illegal purpose, under circumstances which make the seller an active and guilty cooperator with the purchaser in his contemplated violation of law.

By the great weight of authority it is established that where goods have been sold for the express purpose of enabling the buyer to violate the law, the sale is unenforceable.

The authorities which fix the legal consequences of such acts have been cited in our former opinions in this case, and will not be again referred to. Under these facts the law will not permit the Johnson Company to recover from George for the "assortments" so sold, nor for a breach of contract on the part of George in any of said transactions. The evidence on behalf of the Johnson Company, to the effect that it purchased the punch boards for the accommodation of George, or the fact that after suing George for the punch boards he had not paid for it amended its petition and asked judgment only for the prizes that made up said assortments, and did not seek to recover for the punch boards themselves, does not change the inevitable legal conclusion that must follow from the other facts.

On the undisputed controlling facts, George was entitled to have the trial court grant his motion for a directed verdict in his favor, and the judgment against him is clearly contrary to law, for which reason such judgment is reversed and final

judgment entered in his favor. *Suter* v. *Farmers Fertilizer Co.*, 100 Ohio St., 403, at page 413.

*Judgment reversed, and judgment for plaintiff in error.*

FUNK, P. J., and PARDEE, J., concur.