[Cite as *Worthy v. Hawthorne*, 2025-Ohio-1941.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

LINDA WORTHY, et al,     :

      :    Case No. 23CA27

  Plaintiffs-Appellees,   :

      :

  v.       :    <u>DECISION AND JUDGMENT</u>

      :    <u>ENTRY</u>

KEVIN HAWTHORNE,    :

      :    **RELEASED: 05/22/2025**

  Defendant-Appellant.   :

<u>APPEARANCES</u>:

Richard F. Bentley, Bentley Law Firm LLC, Ironton, Ohio, for appellant.

W. Graham Woodyard, Gallipolis, Ohio, for appellees.

Wilkin, J.

**{¶1}** This is an appeal by defendant-appellant, Kevin Hawthorne ("Hawthorne"), from a Lawrence County Court of Common Pleas judgment that granted plaintiffs-appellees, Linda and Kevin Worthy ("Worthys"), declaratory relief. The judgment determined that the Worthys proved that they are entitled to a prescriptive easement, which allows them to use the portion of their driveway that crosses Hawthorne's property.

**{¶2}** On appeal Hawthorne asserts four assignments of error: (1) the trial court erred in finding that he did not give permission for use of the driveway, (2) the trial court erred in finding that there was continuous use of the driveway after 1995, (3) the trial court erred in relying on *Bauerbach v. LWT Ents., Inc.*, as being the applicable legal precedent required to show abandonment of an easement by prescription, and (4) the trial court's findings were against the manifest weight of the evidence.

{¶3} After reviewing the parties' arguments, the law, and the record in this case, we find Hawthorne's four assignments of error lack merit, and overrule them. Therefore, we affirm the trial court's judgment.

BACKGROUND

{¶4} On April 25, 2018, the Worthys filed a complaint seeking a declaratory judgment against Hawthorne. They sought a declaration that they owned an easement by adverse possession for the portion of their driveway that crossed Hawthorne's property, i.e., a prescriptive easement. On May 23, 2018, Hawthorne filed an answer with five affirmative defenses.

{¶5} On July 19, 2019, Hawthorne filed a motion for summary judgment. On January 6, 2020, the Worthys filed a brief in opposition.

{¶6} On February 28, 2020, the trial court granted Hawthorne summary judgment. The Worthys appealed. In *Worthy v. Hawthorne*, this court reversed the summary judgment in favor of Hawthorne, and remanded the matter to the trial court for further proceedings. 2021-Ohio-813, ¶ 35 (4th Dist.).

{¶7} On remand, the court held a two-day bench trial. The Worthys presented three witnesses and Hawthorne presented six. To provide some context for the testimony, a brief description of the properties and property interest in question are described as follows, which is based on a survey admitted into evidence as Exhibit 3. Hawthorne owns property located at 287 County Rd. 65, in Chesapeake, Ohio, which fronts Slate Run Road and has its own driveway. The Worthys own property at 237 County Road 65, in Chesapeake, Ohio, which is situated to the north of, and behind, Hawthorne's property. The Worthys' property is connected to Slate Run Road by a

driveway that, according to the survey, primarily crosses property owned by someone not involved in this case, as well as a small portion of Hawthorne's property, which is at the center of the dispute in this case.

{¶8} The Worthys' witnesses included Linda Worthy, Kevin Worthy, and Rick Hatten. Linda testified that she and her husband, Kevin, own two parcels of property at 237 County Road 65, in Chesapeake, Ohio. She stated that her father Clyde Gallian purchased the property in 1975. The only access to the property was by an existing driveway, which crossed Hawthorne's property. The Gallian family (Linda's father, mother, and brother) used the property for picnics, target shooting, riding a dirt bike, and cutting grass.

{¶9} Linda and Kevin were engaged in 1980 and began rehabbing an existing house on the property where they intended to live. In 1981, Kevin and Linda were married and Linda's father deeded them the property as a wedding gift and they moved into the house that they had renovated. ("marital house"). Linda's parents also built a house on the property in 1982. ("in-law house"). The Worthys lived in the marital house until 1995, when they moved to Huntington, West Virginia.

{¶10} However, the Worthys, including their children, "went back all the time" to the marital house. The driveway continued to be the only way to access both houses. They would go to the marital house to cut the grass and "putter around." Even after they moved out, they kept the utilities to the marital house turned on, both electric and water. They still had a mortgage and they continued to insure the marital house. Linda testified that they had to "keep the property up." Linda also asserted that in the winter they would come back and remove snow.

{¶11} Linda further testified that they were unaware that their driveway crossed Hawthorne's property in one location, until they tried to sell the house in 2016.  It appears that the Pinkermans moved into the Worthys' marital house in 2016 or 2017 and resided there, at least, through the date of the trial in this matter.  The Worthys did not discover their driveway crossed Hawthorne's property until they were attempting to close the sale to the Pinkermans.

{¶12} Rick Hatten testified that he lived at the property in the in-law's house from April 2003 to November 2004.  He testified that the driveway was the only way to get to the two houses.  When he moved in, Hatten stated that the driveway was covered by tall weeds, but it was still passable.  Hatten was never told that he could not use the driveway.  Hatten testified that he used the driveway to get to the in-law's house.

{¶13} Kevin Worthy testified next.  He testified that he was married to Linda Worthy and that they had owned the Chesapeake property on which the in-law and marital houses were located.  He confirmed that he and Linda moved into the marital house in 1981, after they were married, and lived there until they moved out in 1995.  Kevin testified that when they moved out in 1995 they "left everything [in the house] except their clothes."  He stated that trees occasionally fell and a few times blocked the driveway so he would remove them.  Kevin also confirmed that after they moved out of the marital house in 1995, they kept the utilities on and returned to the property to cut the grass or they would lose their insurance coverage on the house.  Kevin further stated that the only time that the driveway was impassible was occasionally when a tree fell across it after a storm.

{¶14} Hawthorne was the first to testify for the defense. He claimed that in 2002, he purchased property at 287 County Rd. 65, in Chesapeake, Ohio, which, is generally situated between the Worthys' property and the Slate Run road. Hawthorne has a separate driveway to his property. Hawthorne stated that when he moved onto his property, the driveway that provided access to the Worthys' property was overgrown with weeds and saplings. He claimed that he never saw any traffic on the driveway. Hawthorne alleged that the Worthys' driveway would not have been accessible by a "normal vehicle." At some point after moving onto his property, he discovered the houses on Worthys' property, which he described as "run-down."

{¶15} Hawthorne testified that had he known that someone was alleging that they possessed a right-of-way where the Worthys' driveway ran, he would have looked for a "bigger spot" to build his home.

{¶16} Hawthorne testified that in 2004 he spoke to Larry Sheline, who told Hawthorne that he was going to be renting one of the houses on the Worthys' property with the goal of eventually purchasing it. Hawthorne said that he informed Sheline that there was no right-of-way to access the house. Hawthorne stated that he permitted Sheline to clear and use the existing driveway to access the house on the Worthys property, until he (Sheline) constructed his own driveway elsewhere on the property. Hawthorne testified if the Worthys get the easement to use the driveway, then it will affect the enjoyment of his property because it runs close to his house. Hawthorne testified that the Worthys' driveway crosses his property for about 15 to 20 yards.

{¶17} Larry Skeens was the next to testify. Skeens sold the property at 287 County Rd. 65, in Chesapeake, Ohio to Hawthorne in 2002. Skeens testified that he

purchased the property in 1998. Skeens claimed that the Worthys' driveway was not used during the four years that he owned the property at 287 County Rd. 65. He claimed that the driveway was overgrown with weeds up to four feet tall.

{¶18} Larry Sheline was the defense's next witness. Sheline testified that he first spoke to Hawthorne just before he was about to move into one of the Worthys' homes in 2004. Sheline testified that the house was in bad shape and needed to be rehabbed. Sheline claimed that when he tried to access the home he could not get up the driveway. It was overgrown with neck-high weeds. Sheline stated that Hawthorne told him that there was no right-of-way to access that property. Sheline maintained that Hawthorne agreed to allow him to clear the driveway and use it temporarily to access his rental until he built a new driveway in a different location.

{¶19} Next to testify was Daniel Casteel, who claimed that he went hunting in 2001, on what would become Hawthorne's property in 2002, as well as the Worthys' property. He claimed that the properties were overgrown. Castell acknowledged that he noticed a driveway, but it was impassible.

{¶20} The last two witnesses for the defense were James Bevins and Charles Ferris. Both had been on Hawthorne's property in 2002, possibly 2003. Both testified they did not see any road running behind Hawthorn's property.

{¶21} Subsequent to the trial, the court issued a final appealable order that made the following findings of fact:

1. Clyde Gallian and Janet Gallian held title to the property known as 237 County Rd. 65, Chesapeake, Ohio, containing parcels #32-063-1300.00 and 32-063-1301.000 ("the Worthy property") continuously from October 15th, 1975, through May 01, 1981.
2. The Worthy property contained a small residence in 1975.

3. The only means of ingress and egress to the residence located on the Worthy property was a gravel driveway. This driveway continues to exist and no other driveway to the property has ever existed.

4. A survey conducted on July 13th, 2016, by Michael Porter indicates that a small section of the driveway crosses over a portion of 287 Co. Rd. 65, Chesapeake, Ohio ("the Hawthorne property").

5. Kevin Hawthorne obtained title to the Hawthorne property in 2004 and continues to hold title to said property.[1]

6. Neither Kevin Hawthorne nor previous title holders to the Hawthorne property gave license or permission for Linda Worthy, Kevin Worthy or previous title holders to the Worthy property to use the gravel driveway at any point.

7. Clyde Gallian and Janet Gallian and their children used the Worthy property for recreation as a country getaway from their Huntington residence between 1975 and 1981.

8. Clyde Gallian and Janet Gallian gifted the Worthy property to their daughter Linda Worthy (then Linda Jean Gallian) as a wedding gift on May 01, 1981.

9. Linda Worthy and husband Kevin Worthy built a home on the Worthy property and resided thereon until 1995, when they moved to Huntington, West Virginia.

10. The marital home shared and continues to share the gravel driveway with the previously-existing residence, and no other driveway was ever built.

11. Linda Worthy testified that she made return trips to the Worthy property on a regular basis throughout 1996 to retrieve personal property which remained in the home.

12. No evidence was presented by Defendant to refute Linda Worthy's testimony regarding the use of the driveway from 1975 through 1996.

13. The home was vacant for a period from 1995 through approximately 2003, when it was rented by tenants.

14. Kevin Worthy used the gravel driveway to access the Worthy property for mowing and other upkeep during the years that the property was vacant.

15. Linda Worthy and Kevin Worthy maintained active utilities for the home on the Worthy property with Hecla Water Corp. and Buckeye Rural Electric Co-op while the home was vacant.

16. Linda Worthy and Kevin Worthy maintained homeowners insurance on the property while it was vacant.

17. Kevin Worthy testified that the homeowner's insurance company performed annual inspections of the home on the Worthy property, including the period where the home was vacant.

18. Linda Worthy testified that they listed the property for sale in 1999 with Paul Herman and he showed the property to potential buyers.

---

[1] The record reflects that Hawthorne purchased his property in 2002, not 2004 as the trial court finds. Therefore, our decision reflect that the purchase date was 2002, not 2004.

19. Rick Hatten testified that he lived on the property from April 2003 until October or November 2004.
20. Rick Hatten testified that when he moved in the driveway and grounds were grown up, but not unmanageable, and he cut the grass every 8-10 days.
21. Larry Sheline began residing at the Worthy property in approximately March of 2003 as a renter.
22. Larry Sheline described the condition of the previously-vacant home at the time he moved in as immaculately clean.
23. Larry Sheline described the state of the driveway at the time he moved in as having tall weeds and "small, small saplings trying to grow up."

{¶22} The court then set out the following conclusions of law:

1. A party claiming a prescriptive easement has the burden of proving by clear and convincing evidence a use of the property that is (1) open, (2) notorious, (3) adverse to the neighbor's property rights, (4) continuous, and (5) at least 21 years in duration.
2. Defendant does not contest that Plaintiffs' use of the driveway was open, notorious, and adverse to his rights. The matter at issue is whether Plaintiffs' use of the drive was continuous for a period of 21 years.
3. In order to aggregate or "tack" adverse uses, it must be established that (a) the party and her predecessor are in privity, (b) the property was sequentially and continuously used, (c) the property was used in the same or similar manner, and (d) that the use was open, notorious, and adverse to the title holder's interest.
4. Privity is the mutual or successive relationship to the same rights of property.
5. The Worthy property was deeded from Clyde Gallian and Janet Gallian to their daughter, who continued to use the drive as a means of ingress and egress in the same manner which it had previously been used. Thus the Gallians and their daughter are in privity and their successive uses tack when calculating the 21-year period.
6. Continuous use is use that is neither interrupted by the acts of the owner nor abandoned by the adverse user through the 21-year statute of limitations.
7. Continuity does not require activity on the disputed land to occur at the same sustained level throughout the statutory period. An analysis of continuity rests, not on the frequency, but on the nature of the activity.
8. Daily or weekly use is not required so long as the parties use of the property is continuous enough to indicate prolonged and substantial use.
9. Once the claimant of a prescriptive easement makes a prima facie case, then the burden shifts to the owner of the servient property to show that the use was permissive and, therefore, not adverse.

10. Plaintiffs established that an easement was created by continuous, open, hostile, use adverse to Defendant's interest by clear and convincing evidence. Defendant did not produce any evidence that this use was permissive.

11. In order to demonstrate that the owner of a dominant estate has abandoned an easement, the owner of the servient estate must establish both (1) nonuse of the easement and (2) an intent to abandon the easement. The intent to abandon an easement must be demonstrated by 'unequivocal and decisive acts' inconsistent with the continued use and enjoyment of the easement.

12. Abandonment cannot be shown by merely proving occasional, infrequent or even complete non-use, without additional evidence showing an intent to abandon.

13. Generally, abandonment will be found only upon a showing of relinquishment of possession with an intent to terminate the easement.

14. The defendant failed to establish that plaintiffs intended to abandon the easement, or that plaintiffs relinquished possession with an intent to terminate the easement.

15. The plaintiffs have satisfied all of the elements of a prescriptive easement through clear and convincing evidence.

16. Accordingly, the plaintiffs are GRANTED a prescriptive easement for the use and maintenance of the gravel driveway marked on the July 13, 2016, survey map prepared by Michael Porter.

**{¶23}** It is this judgment that Hawthorne appeals.

ASSIGNMENTS OF ERROR

I.     THE TRIAL COURT ERRED IN FINDING THAT DEFENDANT, KEVIN HAWTHORNE, DID NOT GIVE PERMISSION FOR USE OF THE GRAVEL DRIVEWAY CROSSING THE HAWTHORNE REAL ESTATE.

II.    THE TRIAL COURT ERRED IN FINDING THERE WAS CONTINUOUS USE OF THE DRIVEWAY BY PLAINTIFFS AFTER 1995.

III.   THE TRIAL COURT ERRED IN RELYING ON *BAUERBACH V. LWT ENTS. INC.*, 4TH DIST. NO. 05CA61, 169 OHIO APP 3D 60 AS LEGAL PRECEDENCE REQUIRED FOR ABANDONMENT OF AN EASEMENT BY PRESCRIPTION.

IV.    THE TRIAL COURT FINDING WAS AGAINST THE MANIFEST WEIGHT OF EVIDENCE.

Assignment of Error I

{¶24} In his first assignment of error, Hawthorne asserts that the trial court erred in finding that he did not give permission for use of the gravel driveway crossing his real estate.  Hawthorne maintains that the evidence showed that in 2004, he and Sheline reached an agreement for Sheline to "clear and open a road" so he could access the house he was going to rent on the Worthys' property.  He claims that there is no evidence to contradict this grant of permission.  Therefore, the trial court erred in finding that Hawthorne had not given permission to cross his property, which would have invalidated the prescriptive easement.

{¶25} In response to Hawthorne's first assignment of error, the Worthys maintain that even if there is evidence that in 2004 Hawthorne gave permission to use the driveway, it does not defeat their prescriptive easement.  The Worthys claim that the trial court found that the evidence provided that the driveway was continuously used from 1975 through 1996, which satisfies the 21-year time requirement for a prescriptive easement.  Hawthorne's permission did not occur until eight years after the prescriptive easement was created.

Assignment of Error II

{¶26} In his second assignment of error, Hawthorne asserts that the trial court erred in finding that the Worthys used the driveway continuously for 21 years.  He claims that the evidence showed continuous use for only 20 years, from 1975 to 1995. The evidence showed that after 1995 the only use of the property was to occasionally cut the grass.  The evidence also showed from 1998 to 2004 the driveway was overgrown and there was no evidence it was used.  Therefore, Hawthorne argues that

the trial court erred when it determined that the Worthys continuously used the driveway for 21 consecutive years.

{¶27} In response to Hawthorne's second assignment of error, the Worthys maintain that Hawthorne is arguing "that the trier of fact made an incorrect determination of fact." The court found that Linda Worthy continued to use the driveway through 1996. There was also testimony that the driveway was regularly used from 1995 to 1996 to access the property to cut the grass. Therefore, the Worthys argue that the trial court's ruling is supported by competent, credible evidence and it did not err in finding that the Worthys continuously used the driveway to access their property for 21 consecutive years.

Assignment of Error III

{¶28} In his third assignment of error, Hawthorne asserts that the trial court erred in relying on *Bauerbach v. LWR Ents. Inc.*, 2006-Ohio-4991 (4th Dist.) as the legal precedent required to determine abandonment of an easement by prescription.

{¶29} Hawthorne asserts that "[i]n Bauerbach the right of ways were stated and conveyed in deeds. Therefore, the servient estate owners had notice of the existence of claims of easements that were in dispute. In this matter appellee's claim is for a prescriptive easement. There is not specific grant of easement stated or reserved in a deed." Therefore, Hawthorne proposes replacing the abandonment test from *Bauerbach* for purposes of determining whether prescriptive easements have been abandoned. In support of a new test, Hawthorne cites the following sentence from our decision in *Queen*: "[T]he use [of the property] must be 'continuous' enough to fairly indicate uninterrupted use." 2012-Ohio-6291, ¶ 38 (4th Dist.).

{¶30} In response to Hawthorne's third assignment of error, the Worthys assert that Hawthorne attempts to distinguish *Bauerbach* from this case for purposes of the applicable abandonment test lacks merit. The Worthys argue that the source of the easement is not a factor in determining abandonment. The Worthys claim that Hawthorne cites no authority that contains an alternate test for abandonment for a prescriptive easement. The Worthys also note that the trial court cited other law as establishing the intent requirement, *Keish v. Russell*, 1995 WL 75388 (4th Dist.).

Assignment of Error IV

{¶31} In his fourth assignment of error, Hawthorne maintains that the "occupancy for an adverse claim 'must be such as to give notice to the real owner of the extent of the adverse claim.'" *Wezler v. Eagleston*, 2002-Ohio-1838, ¶ 5 (5th Dist.).

{¶32} Hawthorne claims from at least 1998 through 2004 there was no use of the road. He argues that he "had no knowledge of the adverse claim until he purchased the real estate in 2002." Hawthorne maintains that he had no way to protect himself from the prescriptive easement occurring years before he purchased the real estate. Therefore, he asserts that the trial court's decision is against the manifest weight of the evidence.

{¶33} In response to Hawthorne's fourth assignment of error, the Worthys argue that significant testimony was presented by both parties regarding the state of the driveway over the years. However, the Worthys claim there was no evidence presented by Hawthorne that contradicted that they continuously possessed the easement for 21-years, from 1975 and 1996. With regard to the evidence presented that addressed after

1996, the court made a ruling as the trier of fact in this case.  Therefore, the court's decision is not against the manifest weight of the evidence.

1. Law

A. Standard of Review

{¶34} The standard of review for a prescriptive easement is whether it is against the manifest weight of the evidence.  *See Fling v. Daniel*, 2019-Ohio-1723, ¶ 14 (4th Dist.).

> [I]n determining here whether the trial court's decision was against the manifest weight of the evidence, we will review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact lost its way and created such a manifest miscarriage of justice that the judgment must be reversed.

*State Dep't of Nat. Res. , Div. of Forestry v. Srofe*, 2024-Ohio-1842, ¶ 34 (4th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

This standard of review is highly deferential and even the existence of 'some' evidence is sufficient to support a court's judgment and to prevent a reversal."  *Id.*, citing *Barkley v. Barkley,* 119 Ohio App.3d 155, 159 (4th Dist.1997).

{¶35} "Additionally, a reviewing court must bear in mind that credibility generally is an issue for the trier of fact to resolve."  *State v. Picklesimer*, 2015-Ohio-1965, ¶ 9 (4th Dist.), citing *State v. Issa,* 93 Ohio St.3d 49, 67 (2001).  "The fact finder 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' "  *Id.*, quoting *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984).  "A trial court, as the trier of fact, is free to believe all, some or none of the testimony of any witnesses."  *Nolan v. Rase*, 2013-Ohio-5680, ¶ 13 (4th Dist.), citing *Chefor v. Morgan,* 2013-Ohio-

4213, ¶ 22 (10th Dist.). "Moreover even if some evidence supports appellant's theory, the trial court is entitled to disbelieve appellant's claims." *Moore v. Kubota Tractor*, 2013-Ohio-226, ¶ 17 (4th Dist.). "A trial court's judgment is not against the manifest weight of the evidence when the fact-finder chooses to believe one set of facts over another." *Id.*, citing *State v. Cooper,* 2007-Ohio-1186, ¶ 17 (4th Dist.). "[W]e will only interfere if the fact finder clearly lost its way and created a manifest miscarriage of justice." *State v. Davis,* 2010-Ohio-555, ¶ 13 (4th Dist.).

## B. Prescriptive Easement

**{¶36}** " 'An easement is a non-possessory property interest in the land of another.' " *Prince v. Harper*, 2024-Ohio-521, ¶ 20 (4th Dist.), quoting *Pomante v. Marathon Ashland Pipe Line, L.L.C.*, 2010-Ohio-1823, ¶ 7 (10th Dist.). " 'Prescription is the acquisition of an easement, over the property of another, through adverse use of that property.' " *Dunn v. Ransom*, 2011-Ohio-4253, ¶ 76 (4th Dist.), quoting *Crawford v. Matthews,* 1998 WL 720734, *2 (4th Dist. Sept. 21, 1998).

**{¶37}** "Ordinarily a party seeking a prescriptive easement 'must demonstrate clear and convincing evidence of open, notorious, adverse, and continuous use of the easement for a 21-year period.' " *Queen*, 2012-Ohio-6291, at ¶ 35 (4th Dist.), quoting *Dunn* at ¶ 77 (4th Dist.). However, if the plaintiff is seeking to establish a prescriptive easement where the 21-year period extends back to prior owners of the property, the plaintiff must "establish [a] prescriptive easement through tacking" by proving that " ' "(a) persons in privity, (b) sequentially and continuously used the disputed property, (c) in the same or similar manner, (d) openly, (e) notoriously, (f) adversely to the title holder's interests, and (g) for at least twenty-one years." ' " *Id.* quoting, *Stillman v. T.W. Grogan*

*Co.,* 1991 WL 127265, *1 (8th Dist. June 27, 1991), quoting *J.F. Gioia, Inc. v. Cardinal Am. Corp.,* 23 Ohio App.3d 33, 37 (8th Dist.1985). " 'Use of a claimed prescriptive easement is "adverse" when it is without the permission of, or inconsistent with the rights of the true property owner.' " *Pinkerton v. Salyers*, 2015-Ohio-377, ¶ 24 (4th Dist.), quoting *Dunn* at ¶ 91 (4th Dist.), citing *Crawford v. Matthews,* 1998 WL 720734, *3 (4th Dist. Sept. 21, 1998). "However, use is not adverse where the use is by permission or accommodation of the owner." *Hindall v. Martinez*, 69 Ohio App. 3d 580, 584 (3rd Dist. 1990).

{¶38} Ohio appellate districts have recognized that "once the claimant's use of the property has been open, notorious, and adverse to the servient property owner for a continuous period of 21 years, it is irrelevant whether the servient property owner subsequently grants the claimant permission to use the property." *See Harris v. Dayton Power & Light Co.*, 2016-Ohio-517, ¶ 23 (2d Dist.), citing *Wood v. Kipton*, 2005-Ohio-1816, ¶ 25 (9th Dist.); *State ex rel. Wilson v. Beljon*, 2013-Ohio-4753, ¶ 55 (11th Dist.). In other words, once it has matured, "a prescriptive easement cannot be extinguished by subsequent inconsistent acts of the user." *Beljon* at ¶ 55, citing *Wood* at ¶ 25. "The only way for the prescriptive easement to be extinguished was by the title owner's obstruction of the easement in an open, notorious, adverse, and continuous manner for at least 21 years." *Harris* at ¶ 23.

{39} "A party ' "who claims an easement by prescription has the burden of proving by clear and convincing evidence all the elements essential to the establishment thereof." ' " *Queen*, 2012-Ohio-6291, at ¶ 35 (4th Dist.), quoting *Fitzpatrick v. Palmer,* 2009-Ohio-6008, ¶ 26 (4th Dist.), quoting *McInnish v. Sibit,* 114

Ohio App. 490, (9th Dist.1953), syllabus. " 'Clear and convincing evidence' is evidence that will produce in the factfinder[']s mind a firm belief or conviction as to the facts sought to be established.' " (Bracketed text in original) *Id.*, citing *State v. Eppinger*, 91 Ohio St.3d 158, 164 (2001). "It is considered a higher degree of proof than a mere preponderance of the evidence, the standard generally used in civil cases, but it is less stringent than the 'beyond a reasonable doubt' standard used in criminal trials.' " *Id.* at ¶ 23.

{¶40} " 'If the claimant makes a prima facie case [for a prescriptive easement], then the burden shifts to the owner of the servient property to show that the use was permissive.' " *Id.*, citing *Dunn,* 2011-Ohio-4253, at ¶ 77 (4th Dist.), quoting *EAC Properties, L.L.C. v. Hall,* 2008-Ohio-6224, ¶ 7 (10th Dist.). " 'Use of a claimed prescriptive easement is "adverse" when it is without the permission of, or inconsistent with the rights of the true property owner.' " *Hawthorne*, 2021-Ohio-813, ¶ 23 (4th Dist.), quoting *Dunn*, at ¶ 91 (4th Dist.).

{¶41} The owner of the servient estate may also show that a prescriptive easement has been abandoned. "In order to demonstrate that the owner of a dominant estate has abandoned an easement, the owner of the servient estate must establish both (1) nonuse of the easement and (2) an intent to abandon the easement." *Bauerbach v. LWR Ents., Inc.*, 2006-Ohio-4991, ¶ 18 (4th Dist.), citing *Crane Hollow v. Marathon Ashland Pipe Line, L.L.C.*, 138 Ohio App.3d 57, 72 (4th Dist. 2000). The intent to abandon an easement must be "demonstrated by 'unequivocal and decisive acts' inconsistent with the continued use and enjoyment of the easement." *Id.* at ¶ 19, quoting *Snyder v. Monroe Twp. Trustees*, 110 Ohio App.3d 443, 458 (2d Dist. 1996).

"Thus, mere nonuse of an easement is generally insufficient to establish abandonment." *Id.*, citing *Crane* at 72 (4th Dist.). "While nonuse for a period equal to or exceeding the 21-year prescriptive period for adverse possession may give rise to an inference of intention to abandon an easement, such nonuse 'may be accompanied by other facts and circumstances which either weaken or strengthen it.' " *Id.*, quoting *Tudor Boiler Mfg. Co. v. I. & E. Greenwald Co.*, 1904 WL 654 (Cir. Ct. August 1, 1904). Whether an easement has been abandoned is a question of fact. *Crane*, at ¶ 72, citing *McCarley v. O.O. McIntyre Park Dist.,* 2000 WL 203997 (4th Dist. Feb. 11, 2000).

2. Analysis

A. First Assignment of Error

{¶42} In his first assignment of error, Hawthorne maintains that there is evidence that the use of the road was permissive, which would have precluded a prescriptive easement because when a use is permissive it is not adverse to the servient property owner. *See Martinez*, 69 Ohio App. 3d at 584 ("A use is adverse where one uses a way over the land of another, without permission, as a way incident to his own land and continues to do so with the knowledge of the owner."). Hawthorne claims that in 2004 he told Sheline, who was going to be a tenant of the Worthys, that he could "clear and open a road" on the property. Hawthorne argues this was permission to use the property in question as a road, which precluded the Worthys from proving prescriptive easement because their use of the property is no longer adverse to Hawthorne.

{¶43} Even assuming that Hawthorne gave Sheline permission to use the driveway, his testimony had no effect on the validity of the Worthys' prescriptive easement. The court found that the Worthys established open, notorious, adverse and

continuous use of the driveway for 21 years, from 1975 to 1996.  "[O]nce the claimant's use of the property has been open, notorious, and adverse to the servient property owner for a continuous period of 21 years, it is irrelevant whether the servient property owner subsequently grants the claimant permission to use the property."  *See Harris*, 2016-Ohio-517, ¶ 23 (2d Dist.); *Wood*, 2005-Ohio-1816, ¶ 25 (9th Dist.); *Wilson*, 2013-Ohio-4753, ¶ 55 (11th Dist.).  Therefore, because any permission provided by Hawthorne to use the driveway occurred after all the elements of the prescriptive easement had matured in 1996, Hawthorne's first assignment of error lacks merit.

### B. Second Assignment of Error

{¶44} In his second assignment of error, Hawthorne claims that the trial court's finding that the Worthys' continuous use of the driveway after 1995 is contradicted by the evidence.  In support Hawthorne makes two arguments.  First, he claims that from 1995 to 1996, the only use of the driveway was to access the property to cut the grass, which is insufficient to support a prescriptive easement.

{¶45} Linda Hawthorne testified that after they moved off the property in 1995, they returned "all the time."  She "would just kind of putter around the house to be there again."  "[I]t was fun just to go over there."  They also returned to cut the grass and knock snow off the roof in the winter.  Linda said that they "had to keep the property up." Thus, the testimony showed that the Worthys regularly returned to their property from 1995 through at least 1996.  However, the critical issue here is not what they did on their property when they returned, but, that each time they returned, they had to use the driveway, including the portion of the driveway that crossed Hawthorne's property, because it was their only means of ingress and egress.  Therefore, we find there is at

least some evidence that the Worthys openly, notoriously, adversely and continuously used the driveway from 1995 to 1996.

{¶46} Second, Hawthorne claims that the evidence showed from 1998 to 2004 the driveway was overgrown and there was no evidence it was used. Therefore, Hawthorne argues that the trial court erred in determining that the Worthys continuously used the driveway for 21 consecutive years. Similar to our analysis of Hawthorne's first assignment of error, even if the driveway was not used from 1998 to 2004, that does not interrupt the 21 years of continuous, adverse use from 1975 to 1996, because once the easement matured in 1996, "a prescriptive easement cannot be extinguished by subsequent inconsistent acts of the user." *Beljon*, 2013-Ohio-4753, at ¶ 55 (11th Dist.); *see also Harris*, 2016-Ohio-517, at ¶ 23 (2d Dist.); Wood, 2005-Ohio-1816, at ¶ 25 (9th Dist.).

{¶47} Therefore, because we find that there is some evidence that the Worthys openly, notoriously, adversely and continuously used a portion of the Hawthorne's gravel driveway from 1975 through at least 1996, we overrule Hawthorne's second assignment of error.

### C. Third Assignment of Error

{¶48} In his third assignment of error, Hawthorne maintains that the trial court erroneously relied on *Bauerbach v. LWT Enters*, 2006-Ohio-4991 (4th Dist.) as setting out the test for determining whether a prescriptive easement has been abandoned. The abandonment test in *Bauerbach* provides:

> The intent to abandon an easement must be demonstrated by unequivocal and decisive acts inconsistent with the continued use and enjoyment of the easement. Thus, mere nonuse of an easement is generally insufficient to establish abandonment. While nonuse for a period equal to or exceeding

the 21-year prescriptive period for adverse possession may give rise to an inference of intention to abandon an easement, such nonuse may be accompanied by other facts and circumstances which either weaken or strengthen it.

(Quotations and citations omitted.) *Id.* at ¶ 19.

**{¶49}** The abandonment test in *Bauerbach* has long been applied to easements, including those created by prescription. "It is well-settled in Ohio that easements may be acquired by prescription and an easement so created stands in all respects on equal footing with an easement acquired by grant." *Rieger v. Penn Cent. Corp.* 1985 WL 7919, *2 (2d Dist. May 21, 1985), citing *Pavey v. Vance*, 56 Ohio St. 162 (1987); 2 Ohio Jur. 3d, Adverse Possession, Section 90, Easements, p. 599. In *Rieger*, the court stated that the "[a]ppellants correctly maintain that under appropriate circumstances, a prescriptive easement may be abandoned. To constitute an abandonment [of a prescriptive easement] there must be a nonuser together with an intention to abandon. The intention can be established by unequivocal and decisive acts clearly indicative of abandonment." *Id.*, citing Schenck *v. Cleveland, Cincinnati, Chicago & St. Louis Railway Co.*, 11 Ohio App. 164 (1st Dist., May 28, 1919); *Junction Railway Co. v. Ruggles*, 7 Ohio St. 1 (1857).

**{¶50}** Despite the fact that the *Bauerbach* test has long been applied to easements, Hawthorne appears to propose that the mere nonuse of a prescriptive easement is sufficient to establish abandonment. Hawthorne suggests that the following passage from our decision in *Queen* supports this new test: "use must be continuous enough to fairly indicate uninterrupted use." 2012-Ohio-6291, at ¶ 38. In *Queen* at paragraph 38, we are discussing what is necessary to establish a prima facie

case for a prescriptive easement, not what is necessary to show that it has been abandoned. Thus, using this passage from *Queen* as the basis for a new abandonment test would be inapposite.

**{¶51}** Most importantly, however, we also find that Hawthorne fails to identify any problem in applying the *Bauerbach* test for the purpose of determining whether a prescriptive easement has been abandoned, as opposed to an express easement. It is true that express easement and prescriptive easements are created in different ways. A party seeking a prescriptive easement must demonstrate clear and convincing evidence of open, notorious, adverse, and continuous use of the easement for a 21-year period, *Queen*, 2012-Ohio-6291, at ¶ 35 (4th Dist.). On the other hand, an express easement can be created in a deed, *Merrill Lynch Mtge., Lending Inc. v. Wheeling & Lake Erie Ry. Co.*, 2010-Ohio-1827, ¶ 31 (9th Dist.), or by a written instrument. *Zimmerman v. Cindle*, 48 Ohio App.3d 164, * 165 (6th Dist.). However, Hawthorne fails to provide any persuasive reason why an express easement should be distinguished from a prescriptive easement for purposes of determining abandonment. Regardless of how an easement is created, all easement holders have acquired equally legitimate rights to their respective easements, so we see no justification for changing the abandonment test for prescriptive easements.

**{¶52}** We do not discard precedent lightly. "Stare decisis is the bedrock of the American judicial system. Well-reasoned opinions become controlling precedent, thus creating stability and predictability in our legal system." *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, ¶ 1. "It is only with great solemnity and with the assurance that the

newly chosen course for the law is a significant improvement over the current course that we should depart from precedent."

**{¶53}** Because we find that Hawthorne provides no reason why the *Bauerbach* test is no longer adequate to determine when a prescriptive easement is abandoned, we decline Hawthorne's invitation to reject the Bauerbach abandonment test in favor of a mere non-use test to determine abandonment of a prescriptive easement.  Therefore, consistent with principal of stare decisis, we find Hawthorne's third assignment of error lacks merit.  Accordingly, we find that the trial court did not err in applying *Bauerbach* for the purpose of determining whether the Worthys' prescriptive easement had been abandoned.

### D. Fourth Assignment of Error

**{¶54}** Finally, Hawthorne argues that the trial court's judgment granting the Worthys a prescriptive easement over a portion of his property is against the manifest weight of the evidence.  Hawthorne maintains that the "occupancy for an adverse claim 'must be such as to give notice to the real estate owner of the extent of the adverse claim.' " *Wezler*, 2002-Ohio-1838, at ¶ 5 (5th Dist.).  Hawthorne asserts that there is no evidence that the driveway was used from 1998 to 2004.  Therefore, Hawthorne claims that he had no knowledge of the Worthys' adverse claim until he purchased his property in 2002.  Consequently, when Hawthorne purchased the property in 2002, there was no evidence to support the requirements of open and notorious use, which are necessary for a prescriptive easement.  As a result, Hawthorne maintains the trial court's judgment that granted the Worthys a prescriptive easement is against the manifest weight of the evidence.

{¶55} A prescriptive easement arises after 21 continuous years of open, notorious and adverse use of property.  However, once these elements are satisfied mere nonuse of an easement is generally insufficient to establish abandonment. *Queen*, 2012-Ohio-6291, at ¶ 35 (4th Dist.).  "Nonuse for a period equal to or exceeding the 21-year prescriptive period for adverse possession may give rise to an inference of intention to abandon an easement, such nonuse may be accompanied by other facts and circumstances which either weaken or strengthen it."  *Bauerbach*, 2006-Ohio-4991, ¶ 19 (4th Dist.).

{¶56} Contrary to Hawthorne's assertion, a review of the record reveals that there is at least some evidence supporting that the Worthys openly, notoriously, and adversely used the driveway for 21 continuous years.  The evidence showed Linda's parents purchased the property in 1975 and that she and her family used it until 1981 when it was gifted to Linda and Kevin as a wedding present.  The gifting of the property from Linda's parents to Linda and Kevin means that tacking together those two periods of possession was proper.

{¶57} The Worthys lived on the property and used the driveway through 1995, and, after they moved out, they returned "all the time" because they had to keep the property up.  Therefore, there is at least some evidence that the Worthy's used the driveway from 1995 to 1996, which completed 21 consecutive years.

{¶58} Even if the trial court had found the testimony of Hawthorne and his witnesses credible, at best it supported that driveway was not used for some period, or periods of time from 1998 to 2004.  Under *Bauerbach,* mere non-use of the easement even for several years without more is insufficient to support the conclusion that the

easement has been abandoned.  Hawthorne has not submitted evidence of "unequivocal and decisive acts inconsistent with the continued use and enjoyment of the easement."  Therefore, we find Hawthorne's evidence is insufficient to support a finding that the driveway has been abandoned.

{¶59} Because we find at least some competent, credible evidence supporting the trial court's decision that the Worthys proved a prescriptive easement and that it has not been abandoned, the trial court's decision is supported by the manifest weight of the evidence.  Accordingly, we overrule Hawthorne's fourth assignment fourth error.

CONCLUSION

{¶60} Having overruled all four of Hawthorne's assignments of error, we affirm the trial court's judgment granting the Worthys a prescriptive easement.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. and Hess, J.:  Concur in Judgment and Opinion.

For the Court,

BY: _____
Kristy S. Wilkin, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**